UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

DONALD ZARDA,

        Plaintiff,

     -against-

ALTITUDE EXPRESS, INC.,
dba Skydive Long Island, and RAY MAYNARD,

        Defendants.
-----------------------------------------------------------------X

COMPLAINT

CV 10- 4334

JURY TRIAL DEMANDED

BIANCO, J.

LINDSAY, M.J.

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ SEP 23 2010 ★
BROOKLYN OFFICE

Plaintiff hereby alleges upon personal knowledge and information and belief as follows:

## NATURE OF THIS ACTION

1. This action is brought by Plaintiff, a gay man, to recover damages for Defendants' discriminatory and otherwise illegal conduct in, among other things, discharging him because of a homophobic customer.

## THE PARTIES

2. Plaintiff is a citizen of the State of Missouri.

3. Defendants Altitude Express, Inc., operating as "Skydive Long Island" in Calverton, New York is a corporation organized under the laws of the State of New York, located in Suffolk County, and operates as a "drop zone," i.e., a place

1

where individuals can come to Skydive under the close supervision of experienced Skydive instructors.

4. Defendants Ray Maynard is the Chief Executive Officer of Skydive Long Island and, upon information and belief, its sole shareholder. Upon information and belief he is a citizen of New York.

5. Plaintiff is an experienced Tandem and Freefall (i.e., Skydive) instructor, who was an employee at Skydive Long Island for various summers in the last decade until his termination in July 2010.

## JURISDICTION AND VENUE

6. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, among them Title VII of the Civil Rights Act of 1964 as amended and the Fair Labor Standards Act. Jurisdiction is also independently predicated on diversity of citizenship.

7. Venue is properly placed in this district pursuant to 28 U.S.C. § 1391(c) in that Defendants Skydive Long Island is deemed to reside in this judicial district.

## FACTUAL ALLEGATIONS UNDERLYING PLAINTIFF'S CLAIMS

8. Plaintiff repeats and realleges the allegations set forth in all previous paragraphs as if fully set forth herein.

9. Plaintiff was employed at Altitude Express, Inc., dba Skydive Long Island (hereinafter "Altitude") as a Tandem & Accelerated Freefall Instructor in the summers of 2001, 2009 and 2010. Altitude Express has approximately 20-30 employees.

10. Plaintiff is has been a licensed instructor in this field since 1995. He has participated in 3500 jumps over the course of his distinguished career.

11. He worked for the defendants in the summers of 2001, 2009 and 2010. Skydiving is a seasonal sport and defendants operate only in the warmer weather.

12. While employed by Skydive Long Island, plaintiff was expected to be at work, seven days a week, until released. The hours of operation were either 7:30 AM to sunset or 9:30 AM to sunset and thus plaintiff was expected not to leave the premises in case a potential customer came, unless it was raining.

13. Although expected to be on the premises approximately twelve (or more) hours per day, plaintiff was only paid per jump. Some days went by when he would be there all day and not make a dime, not even minimum wage for the hours he spent at work at his employer's insistence.

14. A skydive is an intimate experience. The instructor must strap himself hip to hip and shoulder to shoulder with the client. Because of this, before they dive, students must sign a release that contains the following language:

> If I am making a student jump, I understand that I will be wearing a harness which will need to be adjusted by the jumpmaster. If my jump is a tandem jump, I understand that the tandem master will attach my harness to his and that this will put my body in close proximity to that of the tandem master. I specifically agree to this physical contact between the tandem master and myself.

15. Before the client and the instructor jump out of the plane, the client is often sitting on the instructor's lap. The experience is tense for a novice, who is about to jump out of the plane with a stranger strapped to him or her.

16. Notwithstanding the waiver, in order to break the ice and make the client more comfortable, instructors often make light of the intimate situation by making a joke about it.

17. For example, when a man is strapped to another man, an instructor might say something like – and plaintiff heard at defendants location on a number of occasions - "I bet you didn't know you were going to be strapped so close to a man." Plaintiff also heard, "That's the straps you're feeling" (referring to a bulge).

18. On more than one occasion, plaintiff heard straight instructors say, jokingly, when strapped to male clients, "Don't worry, I'm a lesbian." Or, when a straight man was strapped to a straight man (especially when his girlfriend was present), the instructor might say, "Does you're girlfriend know that you're gay?"

19. This was an openly tolerated form of banter. Plaintiff had no problem with it and his way of breaking the ice, on occasion over the years, when I was strapped with a woman was to say, "Don't worry, I'm gay."

20. This was never a problem until one homophobic customer complained about it. On June 18, 2010, plaintiff was suspended for making this remark to a woman whose name, upon information and belief, was Rosanna.

21. It was known at work that plaintiff is gay and he was open about it. Notwithstanding this, however, the terms and conditions of employment were not the same as compared between plaintiff and other similarly situated employees.

22. Ray Maynard was hostile to any expression of sexual orientation that did not conform to sex stereotypes. As one example, he criticized

plaintiff's wearing of the color pink at work. Women at the workplace were allowed to wear pink, and did without criticism.

23.    However, on one occasion, plaintiff broke his ankle and had to wear a cast. It so happened that the color of the cast plaintiff chose was pink. When Ray saw the pink cast for the first time he scoffed at it and said, "That looks gay." Later, at a staff meeting he said, "If you're going to remain here for the day, you're going to have to paint that black," pointing to my cast.

24.    Plaintiff left for that day then came back on another occasion. I had not painted the cast black as requested, however, because my foot was exposed, he was able to see plaintiff's toenails were as well, which were painted pink. At the time, that was plaintiff's preference. Women often wore open-toed sandals to work, as well as pink toenail polish.

25.    Additionally, many other instructors were barefoot at the drop zone. When Ray saw my pink toenail polish, however, he insisted that I wear a sock and cover up my foot.

26.    Plaintiff would have tolerated these backwards attitudes towards men and their use of certain colors, had plaintiff not been fired for expressing to a customer that he was gay.

27. Ray openly tolerated men discussing women and their physical attributes. Specifically, Ray and the men at the office would ogle at women's breasts, including on videos that the company had procured for passengers who had hired the company for a joy ride skydive with an accompanying video.[1] Men often talked of their sexual exploits, and Ray openly discussed his marriage.

28. Plaintiff mentioning the fact that he is gay to a passenger, however, got him fired.

29. In his termination interview, Ray said that plaintiff was being fired because plaintiff had discussed my "personal escapades" outside of the office with a passenger (Rosanna).

30. This was completely untrue. All of the men at Altitude made light of the intimate nature of being strapped to a member of the opposite sex. Plaintiff was fired, however, because the levity he used honestly referred to my sexual orientation and did not conform to the straight male macho stereotype. Mentioning one's sexual orientation is not a discussion of a "personal escapade."

31. Ray also made other statements in defense of his termination of plaintiff, including that Rosanna had touched Rosanna inappropriately.

---

[1] Customers who hired Altitude were referred to as "passengers."

Rosanna thus complained simultaneously that plaintiff was gay and that he had gratified himself sexually by touching her in a heterosexual manner.

32.  These reasons, however, were a false pretext for plaintiff termination which happened because of one homophobic customer's complaint about being near a gay person and of because of plaintiff's failure to conform to stereotypical gender roles for men.

### FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII

33.  Plaintiff repeats and realleges the allegations set forth in all previous allegations as if fully set forth herein.

34.  Plaintiff was fired because his behavior did not conform to sex stereotypes.

35.  Such actions were in violation of Title VII.

36.  By virtue of the foregoing, Plaintiff has been damaged.

### SECOND CAUSE OF ACTION
### SEXUAL ORIENTATION DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

37.  Plaintiff repeats and realleges the allegations set forth in all previous allegations as if fully set forth herein.

38.  Plaintiff was fired because of his sexual orientation.

39. Such actions were in violation of the Executive Law of the State of New York.

40. By virtue of the foregoing, Plaintiff has been damaged.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE FLSA

41. Plaintiff repeats and realleges the allegations set forth in all previous allegations as if fully set forth herein.

42. At all times mentioned herein, as limited by the applicable statutes of limitation, Defendants failed to comply with the FLSA, in that Defendants frequently required and permitted Plaintiff to work more than 40 hours per week, but provision was not made by Defendants to pay Plaintiff at the rate of one and one-half times the regular rate for the hours worked in excess of the hours provided for in the FLSA.

43. Additionally, plaintiff was not even paid minimum wage for the time he was required to sit and wait around for potential skydive clients to appear

44. Most of the records concerning the number of excess hours worked by Plaintiff, and the compensation they received in work weeks in which excess hours were worked, are in the exclusive possession and under the sole custody and control of the Defendants.

45. Plaintiff is unable to state at this time the exact amount owing to them at this time, and proposes to obtain such information by appropriate

discovery proceedings to be taken promptly in this cause.

46. Upon information and belief, Defendants is and was at all relevant times herein aware that overtime pay is mandatory for non-exempt employees who work more than 40 hours per week.

47. Upon information and belief, Defendants are and were at all material times herein fully aware that Plaintiff worked more than 40 hours per week without receiving overtime compensation for such additional work.

48. Additionally, plaintiff did not even earn minimum wage for the majority of hours he spent at the defendant company.

49. Based upon the foregoing, Defendants, for violating the FLSA, are liable on Plaintiff's first cause of action in an amount to be determined at trial, plus liquidated damages, attorney's fees and costs.

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE NEW YORK STATE OVERTIME LAW

50. Plaintiff repeats and realleges the allegations set forth in all previous allegations as if fully set forth herein.

51. At all material times herein Defendants failed to comply with, *inter alia*, NYLL § 663(1) and 12 NYCRR § 142-2.2 in that Plaintiff consistently worked for Defendants in excess of the maximum hours provided by state and federal law, but provision was not made by Defendants to pay Plaintiff at the rate of one and one-half times the regular rate for the hours worked in

excess of the hours provided for by state and federal law.

52. Upon information and belief, Defendants were at all material times herein aware that overtime pay is mandatory for non-exempt employees who work more than 40 hours per week.

53. Upon information and belief, Defendants' non-payment of overtime pay to Plaintiff was willful.

54. Based upon the foregoing, Defendants, for consistently violating New York's Labor Law and its implementing regulations are liable on Plaintiff's second cause of action in an amount to be determined at trial, plus a 25% statutory penalty, attorney's fees and costs.

**WHEREFORE,** Plaintiff demands as follows:

    A.    Compensatory damages in excess of the jurisdictional limit of this court;

    B.    Punitive damages;

    C.    Cost of suit and attorneys fees;

    D.    Liquidated damages;

   E. Such other relief as the Court may deem just and proper.

Dated: New York, New York
    September 20, 2010

               _/s/ Gregory Antollino_
               GREGORY ANTOLLINO
               Attorney for Plaintiff
               1123 Broadway Suite 1015
               New York, NY 10010
               (212) 334-7397