UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

**DONALD ZARDA,**                                         MEMORANDUM
                                                          OF LAW IN OPPOSITION
                                                          AND SUPPORT
          Plaintiff,
             -against-                      10-cv-04334-JFB

**ALTITUDE EXPRESS, INC.,**
**dba Skydive Long Island, and RAY MAYNARD,**

         Defendants.
-----------------------------------------------------------------X

      Don Zarda was a superlative employee who had one frivolous second-hand complaint made against him. The defendants attempt to paint plaintiff as making contradictory claims in this lawsuit. But in fact, it was the defendant who decided to credit the complainant's contradictory complaints, giving plaintiff two main causes of action that fit together – perhaps oddly, like a jigsaw puzzle, but they fit together. In some ways this case, as unusual as it is, is quite simple. Plaintiff was not fired for telling the customer of a girlfriend that he is gay, therefore raising both his (the customer's hackles and Maynard's) and he was fired for doing so. As a result, he has a cause of action for being gay, but also a cause of action for being a male: Don didn't have to stand there and take like a man the assumption and accusation of heterosexual. He's a man – a masculine and athletic one at that – so he's presumed to be heterosexual most of the time. He's not, however, and thus it is a discriminatory action based on his gender rather than sexual orientation to forbid him to correct the assumption that, based on his athletic, heterosexual appearance, that he is gay. Furthermore, at least initially, Maynard credited the allegation that plaintiff had touched a woman for his sexual gratification. At a minimum, he used it as an excuse for firing him without doing any semblance of investigation other than to watch a video that contained nothing but exculpatory evidence. This man Maynard made some big mistakes, and now it is time for judgment to be levied against him.

      To be clear, plaintiff opposes all of defendant's motions except the unpleaded motion that plaintiff was subject to a hostile work environment under Title VII. He moves for summary judgment on

1

his cause of action for adverse action on the grounds of sexual orientation, however, only opposes the motion on the grounds of hostile work environment as a question for the jury.

He would like to, and it is a close call, but he will not move for summary judgment on the grounds of being subject to a sex stereotype under Title VII; nevertheless, he opposes the defendant's motion on this cause of action, as there are clearly jury questions.

Further, plaintiff moves for summary judgment on the grounds that he was not paid minimum wage on days in which he was paid nothing, and asks for an adverse inference on the grounds that the defendants' electronic search was wholly inadequate, undocumented, and sanctionable as a matter of law.

## STATEMENT OF FACTS

The statement of facts are set forth in the declaration of Donald Zarda and plaintiff's 56.1 statement, which relies chiefly on the declaration of Ray Maynard. To restate it here is to waste the court's time; the preliminary statement, supra, should suffice given the extensive factual material that has already been submitted.

### A.  APPLICABLE SUMMARY JUDGMENT STANDARDS.

The Court is fully familiar with the standards governing summary judgment. See FRCP 56; Global Network Commc'ns, Inc. v. City of New York, 562 F.3d 145, 150 (2d Cir. 2009).

### B.  QUESTIONS INDICATIVE OF DISCRIMINATION UNDER TITLE     VII REQUIRE A TRIAL.

#### 1.  Standards under Title VII

A claim under Title VII is examined under the familiar standards, where the plaintiff bears the initial burden of establishing a "prima facie" case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). A prima facie case under McDonnell Douglas is a *de minimus* burden in which the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered adverse action; and (4) the adverse action occurred under circumstances "giving rise

2

to an inference of discrimination." See Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000). If the plaintiff meets this burden, the defendant must articulate "some legitimate, nondiscriminatory reason" for its action. Once such a reason is provided, the plaintiff may still prevail if s/he can show that the employer's determination was in fact the result of discrimination. Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir.2008). Summary judgment at that point becomes simply a question as to whether the evidence, viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that [his] dismissal was motivated at least *in part by* …discrimination." Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 114 (2d Cir. 2007) (emphasis added) (citing, inter alia, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000).

### 2. Plaintiff's Prima Facie Case for Sex Stereotyping Under Title VII

In this case, plaintiff meets his prima facie burden, and this is evidence of discrimination that may be used not just for technical evidentiary reasons but as evidence as to the ultimate question of discrimination. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149-50 (2000) ("Whether judgment as a matter of law is appropriate in any particular case will depend on . . . the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence . . . .") First, there is no question that plaintiff is a member of a protected class insofar as he is a male and it is discrimination to subject an employee to adverse action because he is a male. Sassaman v. Gamache, 566 F.3d 307 (2d Cir. 2009). The defense sets forth a lovely presentation that sex stereotyping states a cause of action. While the remainder of their brief broadly construes the facts in their own favor, the second paragraph at page 3 of their brief, setting forth that sex stereotyping states a cause of action:

> The United States Supreme Court has held that evidence of gender stereotyping may establish a violation of Title VII. Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989). An employer subjects an employee to gender stereotyping by assuming an employee will conform to a stereotype of their gender. See Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107,119 (2d Cir. 2004) (holding stereotyping applies "to the supposition that a woman will conform to a gender stereotype"). Stereotype remarks can be "evidence that gender played a part in an adverse employment decision." Back v.

3

>   Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 119 (2d Cir. 2004) (internal quotations omitted).

Def. Br. at 3. In fact in the Back case, the Circuit found no contradiction on the grounds that the plaintiff was asserting both a garden variety gender discrimination claim and a sex stereotype claim. Id. at 119.

But the remainder of the brief rehashes some claims that plaintiff withdrew – federal overtime for example – and makes claims so disingenuous – e.g., that plaintiff did not suffer adverse action – as to be incredible.

In any case, the second prong is that plaintiff must show he was qualified for the job in question. Clearly in this case, plaintiff had more experience than Maynard, and according to him was a good and safe instructor. Winstock strongly advocated for his not being terminated, and thought it was wrong. Both Winstock and Maynard highly rated the jump that plaintiff got fired for; the defendants want to accuse plaintiff of contradicting himself, but there is no bigger contradiction than firing an employee for doing an excellent job

Third, Plaintiff was fired, and an adverse action, which can be significantly short of termination where a plaintiff endures a "materially adverse change" in the terms and conditions of employment. Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000. (adverse actions can be many, "unique to a particular situation.") Here, first, plaintiff was fired for a nearly perfect jump—that the decision maker rated 8 or 9 out of ten and the chief instructor 97 out of 100. The act of crediting a facially frivolous allegation caused him to lose his job, and significant damage to his ego wherein he cannot bring himself to do the job that he brought so much joy to so many people, including himself. As he stated in his declaration, in addition to firing him for simply stating he is gay, he

>   no longer feels like [he] can be [him]self working jumping, especially tandem jumping having to strap people to me and touch in so many places to perform the job. Because of what Ray Maynard did terminating me for such reasons, regardless of the bogus customer complaint, I can no longer work in this industry without fear of having been branded as some kind of gay pervert

who enjoys "groping women." Zarda Dec. at ¶¶ 10 & 47. In addition to that, plaintiff was suspended by Maynard, who stole wages from him for a week. Though not to put too fine a point on it, even the last of

4

these three is an adverse action – there is a case that supports it but unfortunately I couldn't find it – because he lost the *use* of that money. He had earned that money, and Maynard's stealing it from him underscores his character and could possibly have resulted in plaintiff's not being able to pay rent, a car payment, or whatever. That Maynard gave the money back demonstrates that he knew what he did was wrong, but it doesn't erase having stolen the money from him in the first place. A criminal that is ordered to pay restitution does not erase the crime.

Finally, plaintiff must show an inference of discrimination. A plaintiff need not at this stage prove that she can convince a jury of discrimination; all he needs to do is raise a *de minimus* inference of discrimination. De la Cruz v. New York Human Resources Administration 82 F.3d 16, 20 (2d Cir.1996). The inference does not require any particular formula, and plaintiff clearly raised it. The evidence in this case shows that, a second hand allegation for which Maynard only saw exculpatory evidence – the video – Maynard credited very quickly, or at least he said so, meaning that he relied on the excuse to fire plaintiff, which is just as bad. Additionally, plaintiff presented evidence that he did not want to be assumed heterosexual simply because he presents masculine in appearance. Finally, he likes to flaunt it up a little bit, by wearing pink, which is traditionally not a masculine color. All of these points support his claim prima facie case.

### 3.     Pretext

Assuming defendant's can articulate a legitimate reason for discrimination, the burden then shifts to plaintiff to show pretext. I will assume that defendant has articulated a reason, but I deny that there is one. But let us assume. For the purposes of plaintiff's Title VII cause of action that the reason for plaintiff's termination was based in part on the allegation that he groped a woman, the pretext is obvious: (1) Plaintiff is gay and Maynard knew it; (2) Maynard did no investigation to support the second-hand complaint; (3) there were legitimate safety reasons for touching Orellana, something for which she signed a waiver; and (4) finally, defendant had used the waiver as a shield against complaints

5

before, but in this case used it as a sword against plaintiff. All of these are at least questions of fact that would allow a jury to find pretext.

### 4. The Ultimate Question of Discrimination

To overcome a motion for summary judgment, a plaintiff must show enough evidence that would allow a reasonable jury to find discrimination. However, disbelief of the Defendant's proffered reasons for taking adverse action alone can be a basis to allow a jury to find that discrimination is the real reason for the termination. Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001) ("only occasionally will a prima facie case plus pretext fall short of the burden a Plaintiff carries to reach a jury on the ultimate question of discrimination").

Here plaintiff has enough evidence to get to the jury the final prong, especially when it is coupled with an inference of mendacity. Cross v. New York City Transit Authority, 417 F.3d 241, 250 (2d Cir. 2005). Here Maynard's shifting, contradictory explanations for terminating plaintiff allow that inference of mendacity. Most significantly, he dropped the groping allegation to the unemployment board, even though he had a financial interest in asserting it. Does this prove that he's a nice guy or a liar – that's a question for the jury, but the bottom line is that he told plaintiff one thing, then told the Department of Labor another. Furthermore, this case is highly similar to Sassaman, which the Court recognized in Your decision to preclude Professor Yoshino's testimony, citing Sassaman, that "it's my view . . . that that issue of stereotyping is not subtle, it's not difficult to understand, it's not complex, it's very straightforward." Transcript, 2/22/13 at 8-9. In this case there are some differences between Sassaman, and defendant pointed out that in that case, the decision maker said works to the effect that, "well she's a woman and we have to believe her." In this case, while Maynard didn't say that, he *did* that by immediately crediting a wholly non-credible second-hand complaint. In Sassaman, there was evidence that the accuser had a relationship with the plaintiff, Sassaman at 310, and it could have led to the conclusion that it was inappropriate. In Zarda's case, the plaintiff had no relationship with the woman, and could even remember her. Further more, unlike Sassaman – at least insofar as the decision

6

states – plaintiff is gay. Finally, there were other reasons to discredit the allegation for which no investigation was undertaken, including that, plaintiff was <u>required</u> to touch the complainant's girlfriend, and everything he did was normal, and in accord with the safety of the passenger.

Additionally, Mr. Sassaman had some performance problems, id. at 309-10, whereas plaintiff had none.

The second reason plaintiff meets the final prong for the jury, is that Maynard punished him for not acquiescing to the tired old joke, "I bet you didn't think your girlfriend was going to get strapped to another guy." Defendant and plaintiff agree that for the most part he presents as masculine and athletic, but to fire him for removing himself from the equation that because he is masculine and athletic that therefore he is straight is discrimination against him because of his gender: Maynard would have it that he has to take it like a man and let people assume he is heterosexual. By contrast, plaintiff's argument is, how dare you presume that I am heterosexual? This is not a sexual orientation discrimination complaint, but a sex stereotype complaint.

Finally, plaintiff attested to evidence that Maynard was upset with plaintiff's use o0f the color pink. The argument that he had to put a sock over his cast in order to protect the customers from fear of injury is belied by the waiver and the Maynard safety video, both of which speak frankly about injury and death. Finally, no one is going to be fooled about a man with a sock over his cast in crutches; any person seeing plaintiff in such a state will know he is injured. Plaintiff also presented evidence that Maynard allowed a tandem instructor's girlfriend – Tara – appear at the dropzone in crutches after she broke her back on a tandem jump. The suggestion that Maynard just didn't want plaintiff in pink because it is a feminine color is pink is belied by these arguments – unassailable facts – and furthermore, plaintiff attested that after he had his cast removed and was wearing a boot, plaintiff saw his pink toenails and said "That's Gay." Defendants will argue again that this, therefore is a sexual orientation complaint, but no. However odious, the expression "That's gay" is used as a general pejorative. Maynard was expressing his disapproval over plaintiff's failure to conform to a sex stereotype.

7

### C. DEFENDANT FIRED PLAINTIFF, IN PART, BECAUSE HE ANNOUNCED HE WAS GAY, OFFENDING THE SENSIBILITY OF CUSTOMERS AND THAT IS NOT A LEGITIMATE REASON TO TERMINATE AN EMPLOYEE.

Plaintiff agrees with defendant that the standard under Executive Law § 296 are similar to Title VII, which presents a problem for defendant. No matter if Maynard knew that plaintiff was gay when he was hired, raising the "same actor inference," in this case, Maynard was not acting only on his own biases, but on those of his customers. In other words, defendant argues that plaintiff was terminated because he made a customer "uncomfortable." However, this "discomfort" was, in part, telling the customer that he is gay. It is now, however, "widely accepted that a company's desire to cater to the perceived [discriminatory] preferences of its customers is not a defense under" antidiscrimination laws. Chaney v. Plainfield Health Care Ctr., 612 F.3d 908, 913 (7th Cir.2010). Therefore, plaintiff's stating that he was gay – something that the Court has ruled no juror can believe or otherwise be struck for cause – was a factor in his termination. Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 114 (2d Cir. 2007). As such, plaintiff has established discrimination as a matter of law.

### D. DEFENDANT OWES PLAINTIFF A MINIMUM WAGE.

Imagine a job that advertised the possibility of a big salary, but no guarantee. That is essentially what the defendants argue in asserting that "piecework" is a legitimate inquiry. The Federal minimum wage laws do not apply to New York, which offers a higher minimum wage on an *hourly* basis. If plaintiff stays all day and makes nothing, he is entitled to minimum wage for that, and defendant has the obligation to track hours, and sign in sheets, and know when their employees are working or not. See Matter of Bae v. Industrial Bd. of Appeals, 2013 N.Y. App. Div. LEXIS 1941 (1st Dep't 2013) ("Petitioners admit that they maintained no records of Aydin's hours for the relevant time period; they attempted to reconstruct those hours. The Board was entitled to credit Aydin's testimony and to discredit petitioners' reconstruction, which was based upon a series of estimates and extrapolations that rested on dubious or unsubstantiated

8

assertion") In <u>Bae</u>, as here, Maynard kept no records, and plaintiff did. He is owed his minimum wage for the days in which he made no money.

### E. DEFENDANT SHOULD BE SANCTIONED FOR A WHOLLY INADEQUATE ELECTRONIC SEARCH AND A FAILURE TO KEEP ELECONTRIC RECORDS.

Maynard told Callanan to do an electronic search, but he has no idea what she did. Callana testified that she did some electronic search, but not on every computer, and before the company had a main server. In the end, plaintiff was able to produce electronic evidence that favored his case. These three factors demonstrate the classic scenario in which defendants have lost or done a lackadaisical search that the court cannot condone. The Court should impose sanctions in the form of an adverse inference. See <u>Zubulake v. UBS Warburg LLC</u>, 229 F.R.D. 422 (S.D.N.Y. 2004). <u>See also</u> <u>Residential Funding Corp. v. DeGeorge Fin. Corp</u>., 306 F.3d 99, 113 (2d Cir. Conn. 2002) ("discovery sanctions, including an adverse inference instruction, may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence.") Here the defendants have no idea what they did and cannot explain how a 2009 document – one that praises his performance -- came into plaintiff's possession but not theirs. Under the circumstances, an adverse inference should be granted, or a lousy search like the one performed here will be come standard, and parties will not get evidence they are entitled to.

### F. Hostile Work Environment

Plaintiff's claim herein is not his strongest, but the evidence presented demonstrates enough to get to the jury. That plaintiff has thick skin should not count against him. The jokes bothered him, even if they were not malicious.

9

## CONCLUSION

For these reasons and for all reasons set forth in the evidence submitted, defendants' motion should be denied and plaintiff's granted.

Dated:          New York, New York
                April 9, 2013

                                            _____/s/_____
                                            GREGORY ANTOLLINO
                                            Attorney for Plaintiffs