UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DONALD ZARDA,

                           **Plaintiff,**

     – against –

ALTITUDE EXPRESS, INC. d/b/a SKYDIVE LONG
ISLAND and RAY MAYNARD,

                         **Defendants.**

Case No.:
CV-10-4334 (JFB)(ARL)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Saul D. Zabell, Esq.
Zabell & Associates, P.C.
1 Corporate Drive, Suite 103
Bohemia, New York 11716

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii

I.      PRELIMINARY STATEMENT .........................................................................1

II.     FACTS ........................................................................................................1

III.    LEGAL STANDARD ............................................................................... 1-2

IV.     ARGUMENT ............................................................................................2

    I.PLAINTIFF'S STATEMENTS OF FACTS SUBMITTED PURSUANT TO
      LOCAL RULE 56.1 SHOULD EACH BE STRICKEN AS THEY DO NOT
      BEAR CITATIONS TO ADMISSIBLE FORMS OF EVIDENCE ......................2

        A. PLAINTIFF'S STATEMENTS OF FACTS DO NOT COMPLY WITH THE
           FEDERAL RULES .......................................................................... 2-5

        B. ZARDA'S CONTRADICTORY AFFIDAVIT AND DECLARATION ARE
           DEFECTIVE AND MUST BE DISREGARDED ......................................... 5-9

    II. PLAINTIFF CANNOT DEMONSTRATE ANY MATERIAL FACTS IN
        DISPUTE FOR HIS CLAIMS UNDER TITLE VII OR THE NEW YORK
        LABOR LAW........................................................................................10

        A. PLAINTIFF'S GENDER STEREOTYPING CLAIM FAILS AS A
           MATTER OF LAW...............................................................................10

            1. Plaintiff did not Suffer an Adverse Employment Action for his Ostensible
               Non-Conforming Gender Stereotypes.................................................... 10-11

            2. Plaintiff's Claim for Gender Discrimination Stemming from his
               Disclosure of his Sexual Orientation Fails as a Matter of Law................11

            3. Plaintiff Fails to Present Any Material Facts in Dispute Regarding his
               Gender Stereotyping Claim .................................................... 11-14

        B. NEW YORK LABOR LAW CLAIMS ............................................................14

            1. Minimum Wage Under the NYLL ........................................................ 14-15

            2. Overtime Under the NYLL.................................................................. 15-16

III. PLAINTIFF'S SEXUAL ORIENTATION CLAIM FAILS AS A MATTER OF LAW ....................................................................................16

    A. **PLAINTIFF'S CLAIM FAILS AS A MATTER OF LAW** ...........................16

        1. <u>Hostile Work Environment</u> .......................................... 16-18

        2. <u>Disparate Treatment</u> ......................................................18

            i.    *<u>Prima Facie</u> Case* ............................................ 18-19

            ii.   <u>Plaintiff was Terminated for a Legitimate Business Reason</u> ... 19-21

            iii.  <u>Pretext</u> .............................................................. 21-25

    B. <u>PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT FAILS</u> ................................... 25-26

IV. PLAINTIFF CANNOT MEET HIS BURDEN ESTABLISHING THE ELEMENTS OF A SPOLIATION CLAIM ............................................. 26-28

V.     <u>CONCLUSION</u> ....................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**UNITED STATES SUPREME COURT**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .............................................2

Celotex v. Catrett, 477 U.S. 317 (1986) .............................................................2

Faragher v. City of Boca Raton, 524 U.S. 775 (1998)................................... 16-17

Grady v. Affiliated Cent., Inc., 525 U.S. 936 (1998).......................................22

Lujan v. Nat'l Wildlife Federation, 497 U.S. 871 (1990)................................6

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ............................. 10, 18-20

**FEDERAL COURT CASES**

**<u>United States Court of Appeals</u>**

BellSouth Telecomms. v. W.R. Grace & Co., 77 F.3d 603 (2d Cir. 1996) ....................5

Buttry v. Gen. Signal Corp., 68 F.3d 1488 (2d Cir.1995) .......................................6, 18

Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93 (2d Cir. 2001)................20, 26

Dawson v. Bumble & Bumble, 398 F.3d 211 (2d Cir. 2005) ................................. 10-11

Dister v. Continental Group, Inc., 859 F.2d 1108 (2d Cir. 1988).................................20

Gallagher v. Delaney, 139 F.3d 338 (2d Cir. 1998) ....................................... 16-17

Giannullo v. City of New York, 322 F.3d 139 (2d Cir. 2003).......................................3

Grady v. Affiliated Cent., Inc., 130 F.3d 553 (2d Cir.1997) ............................. 18, 21-22

Harlen Assocs. v. Vill. of Mineola, 273 F.3d 494 (2d Cir. 2001) ...............................2

Hayes v. New York City Dep't of Corr., 84 F.3d 614 (2d Cir.1996)............................6

Holtz v. Rockefeller & Co., Inc., 258 F.3d 63 (2d Cir. 2001) ....................................3

Hollander v. American Cyanamid Co., 172 F.3d 192 (2d Cir. 1999).............................3

Mack v. United States, 814 F.2d 120 (2d Cir. 1987).................................................6

Miller v. International Telephone & Telegraph Corp., 755 F.2d 20 (2d Cir. 1985)........................6

Niagara Mohawk Power Corp. v. Jones Chem. Inc.,
    315 F.3d 171 (2d Cir. 2003).............................................................2

Nora Beverages, Inc. v. Perrier Group of America, Inc.,
    269 F.3d 114 (2d Cir. 2001).............................................................2

Patterson v. County of Oneida, N.Y., 375 F.3d 206 (2d Cir. 2004) ................................................3

Perma Research and Development Co. v. Singer Co., 410 F.2d 572 (2d Cir. 1969).......................6

Raskin v. Wyatt, 125 F.3d 55 (2d Cir. 1997)..............................................................2

Reisner v. General Motors Corp., 671 F.2d 91 (2d Cir. 1982) ......................................................6

Sassaman v. Gamache, 566 F.3d 307 (2d Cir. 2008)...................................................12-13, 22-23

Scaria v. Rubin, 117 F.3d 652 (2d Cir. 1997)..............................................................20

Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87 (2d Cir. 2001) ...................................21

Tarshis v. Riese Org., 211 F.3d 30 (2d Cir. 2000).........................................................20

United Magazine Co., Inc. v. Curtis Circulation Co., 279 F. App'x 14 (2d Cir. 2008) .................6

United States v. Private Sanitation Industry Association of Nassau/Suffolk, Inc.,
    44 F.3d 1082 (2d Cir. 1995)..............................................................3

Weinstock v. Columbia Univ., 224 F.3d 33 (2d Cir. 2000).........................................................21

Wernick v. Federal Reserve Bank of New York, 91 F.3d 379 (2d Cir 1996) .............................1-2

West v. Goodyear Tire & Rubber Co., 167 F.3d 776 (2d Cir.1999) .............................................26

**Federal District Court**

Am. Auto. Assn. v. AAA Auto. Club of Queens, Inc.,
    1999 WL 97918 (E.D.N.Y. Feb. 8, 1999)...........................................................3

Brink v. Union Carbide Corp., 41 F. Supp. 2d 402 (S.D.N.Y. 1997)..........................................5

Centrifugal Force, Inc. v. Softnet Commc'n, Inc.,
    783 F. Supp. 2d 736 (S.D.N.Y. 2011)............................................................26

IBS Ketel, Ltd. v. Korea Telecom Am., Inc., 2000 WL 821013 (S.D.N.Y. June 22, 2000)...........3

Johnson v. MacDonald, 897 F. Supp. 2d 51 (E.D.N.Y. 2012) ..........................................13, 20, 24

Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341 (S.D.N.Y. 2012) ................................14

Rivera v. Nat'l R.R. Passenger Corp., 152 F.R.D. 479 (S.D.N.Y.1993) .......................................3

Rodriguez v. Schneider, 1999 WL 459813 (S.D.N.Y. June 29, 1999)........................................ 2-3

Scaria v. Rubin, 1996 WL 389250 (S.D.N.Y. July 11, 1996) .....................................................20

United Magazine Co. v. Murdoch Magazines Distribution, Inc.,
      393 F. Supp. 2d 199 (S.D.N.Y. 2005)..................................................................................6, 9

Viruet v. Citizen Advice Bureau,
      2002 WL 1880731 (S.D.N.Y. Aug. 15, 2002).........................................................16, 20

Watt v. New York Botanical Garden, 2000 WL 193626 (S.D.N.Y. Feb. 16, 2000) .......................3

Zenni v. Hard Rock Cage Int'l, 903 F. Supp. 644 (S.D.N.Y. 1995)......................................... 5-6

Zublake v. UBS Warburg LLC, 229 F.R.D. 422 (S.D.N.Y. 2004) .............................................27

**STATE COURT CASES**

Brennan v. Metro. Opera Ass'n, Inc., 729 N.Y.S.2d 77 (2001) ...................................................21

**STATUTES & REGULATIONS**

Fed. R. Civ. P. 56.................................................................................................................1, 28

Fed. R. Civ. P. Rule 56(c) ............................................................................................................1

Fed. R. Civ. P. 56(e) ................................................................................................................ 2-3

Local Civil Rule 56.1 ............................................................................................................... 2-3

New York Labor Law §190. ........................................................................................................14

New York Labor Law § 652. .......................................................................................................14

12 N.Y.C.R.R. § 142-2.16 ..................................................................................................... 14-15

Title VII of the Civil Rights Act of 1964....................................................................... 10-11, 20

**OTHER**
Moore's Federal Practice § 56.14[4][a].........................................................................................3

# I. PRELIMINARY STATEMENT

Defendants, Altitude Express, Inc. d/b/a Skydive Long Island ("SDLI") and Ray Maynard, respectfully submit this reply memorandum of law in further support of their Fed. R. Civ. P. 56 motion seeking summary judgment as to each of Plaintiff's claims and in opposition to Plaintiff's cross-motion for summary judgment.

Plaintiff seeks recovery of damages allegedly stemming from discrimination and wage and hour infractions that he claims occurred from May 2009 to June 2010. However, the factual record demonstrates that Plaintiff cannot meet his evidentiary burden for any of these claims. Consequently, Defendants' motion for summary judgment should be granted in its entirety as no material issues of fact exist sufficient to warrant the resolution of this dispute at trial and further, Plaintiff's cross-motion must be denied in its entirety.

# II. FACTS

The material facts in this case are undisputed and are contained within Defendants' 56.1 Statement and Counter 56.1 Statement and, for purposes of avoiding redundancy, will not be fully repeated herein.[1]

# III. LEGAL STANDARD

Summary judgment is appropriate where, like here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(c); Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 383 (2d Cir. 1996). Where the moving party has met the threshold burden of supporting the

---

[1] The facts in this case are derived from deposition testimony of all named parties, Rosanna Orellana, David Kengle, Lauren Callanan, and Richard Winstock. True and accurate copies of which are annexed to the Declaration of Saul D. Zabell dated February 11, 2013 as Exhibits 11-16. Additional documentary evidence is annexed thereto as Exhibits 1 through 10.

motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Local Rule 56.1 requires the party opposing a motion for summary judgment to identify specific and material factual disputes.

The non-movant will not defeat summary judgment merely by pointing to self-serving conclusory allegations without evidentiary support. See Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003); Harlen Assocs. v. Vill. of Mineola, 273 F.3d 494, 498 (2d Cir. 2001). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only factual disputes that might affect the outcome of the litigation, in light of the substantive law, will preclude summary judgment. Id. When the moving party has met the standard of Rule 56, summary judgment is mandatory. See Celotex v. Catrett, 477 U.S. 317, 322-23 (1986).

## IV. ARGUMENT

### POINT I

### PLAINTIFF'S STATEMENTS OF FACTS SUBMITTED PURSUANT TO LOCAL RULE 56.1 SHOULD EACH BE STRICKEN AS THEY DO NOT BEAR CITATIONS TO ADMISSIBLE FORMS OF EVIDENCE

#### A. PLAINTIFF'S STATEMENTS OF FACTS DO NOT COMPLY WITH THE FEDERAL RULES

It is well settled law within the Second Circuit that every statement in the parties' Local Rule 56.1 submissions must be supported by citations to record evidence. F.R.C.P. 56(e) requires that papers in support of and in opposition to motions for summary judgment contain evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Group of America, Inc., 269 F.3d 114, 123 (2d Cir. 2001); Raskin v. Wyatt, 125 F.3d 55, 65 (2d Cir. 1997). Further, "*Rule 56.1 statements are not argument*. They should contain factual assertions with citation to the record. They should not contain conclusions." Rodriguez v. Schneider, No. 95 Civ. 4083, 1999

WL 459813, at *33, n. 3 (S.D.N.Y. June 29, 1999) (emphasis in original); see also Giannullo v. City of New York, 322 F.3d 139, 142 (2d Cir. 2003) (unsupported facts in moving party's Local Rule 56.1 statement disregarded); Holtz v. Rockefeller & Co., Inc., 258 F.3d 63, 74 (2d Cir. 2001) (same). In the Second Circuit, statements and argument, without citation to evidence, are improper in a 56.1 statement of facts. "[D]istrict courts in the Southern and Eastern Districts of New York have interpreted current Local Rule 56.1 to provide that 'where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.'" Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73-74 (2d Cir. 2001) (quoting Watt v. New York Botanical Garden, No. 98 Civ. 1095(BSJ), 2000 WL 193626, at *1 n. 1 (S.D.N.Y. Feb. 16, 2000)); see also IBS Ketel, Ltd. v. Korea Telecom Am., Inc., No. 98 CIV. 4856(DC), 2000 WL 821013, at *1 n. 1 (S.D.N.Y. June 22, 2000); Am. Auto. Assn. v. AAA Auto. Club of Queens, Inc., No. 97 CV 1180, 1999 WL 97918, at *3 (E.D.N.Y. Feb. 8, 1999); Rivera v. Nat'l R.R. Passenger Corp., 152 F.R.D. 479, 484 (S.D.N.Y.1993). "Allowing a Local Rule 56.1 statement to substitute for the admissibility requirement set forth in Fed. R. Civ. P. 56(e) 'would be tantamount to the tail wagging the dog.'" Holtz, 258 F.3d at 74 (quoting Rivera, 152 F.R.D. at 484). Accordingly, courts are free to strike or disregard inadmissible statements in parties' summary judgment submissions. See Patterson v. County of Oneida, 375 F.3d 206, 219, 222-23 (2d Cir. 2004); Hollander v. American Cyanamid Co., 172 F.3d 192, 197-98 (2d Cir. 1999); United States v. Private Sanitation Industry Association of Nassau/Suffolk, Inc., 44 F.3d 1082, 1084 (2d Cir. 1995); 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[4][a] (affidavits, deposition testimony, and documents containing inadmissible evidence properly disregarded).

In the present case, Plaintiff's 56.1 Statement and 56.1 Counter Statement are rife with pallid arguments by Plaintiff's counsel. Defendants respectfully refer the court to paragraphs 14, 15, 25, 26, 28, 35, 36, 38, 40, 43, 46, 52, 54, 56, 57, 63, 67, 68, 69, 73, 74, 75, 76, 79, 83, 90, 92, 94, 96, 97, 107, and 108 of Plaintiff's 56.1 Counter Statement and paragraphs 15, 32, 38, 40, 58, 59, 60, 65, 66, 74, 84, 85, 100, 101, 108, 109, 112, 113, 125, 126, 127, 130, 131, 132, 134, 137, 138, 139, and 144 of Plaintiff's 56.1 Statement. For example, paragraph 69 of Plaintiff's 56.1 Counter Statement states:

> Denied, and it is unclear what "actions" Kengle is talking about. Kengle wanted his money back. He is a thirty-something unemployed waiting [*sic*] who was recently as 2006 was driving a 1988 car on installment plan. Antollino dec. at Exhibit Q (TLO report). This is not to denigrate the unemployed, but let's be real: Kengle wanted to impress his girlfriend with an expensive gift that he couldn't afford, because men were always hitting on her; then he devised a way to get his money back by making a nonsensical complaint – that a homosexual was hitting on his girlfriend. Further he has no qualifications for evaluating plaintiff's performance, thus they are inadmissible; (2) the contemporaneous evidence shows he was having a wonderful time; and (3) it is as legal and proper to state one is gay in the workplace as it is to say one is Cuban, something Maynard himself believes. Dep. at 256. Forcing an employee to pretend he is heterosexual is akin to forcing a black person to show up to work in white face. See generally, Kenji Yoshino, Covering.

(Pl. 56.1 Counter Statement ¶ 69).     Each of the above-referenced paragraphs contains, or is wholly comprised of unsupported statements ranging from nonsensical argument to stream of consciousness ramblings by counsel, none of which are supported by a citation to the factual record. For another example, paragraph 85 of Plaintiff's 56.1 Statement states: "Logically, Zarda lost the beneficial use of that money during the week it was taken away from him." (Pl. 56.1 Statement ¶ 85). These statements and/or arguments are entirely improper, and violate the Federal and Local Rules of Procedure. Further, in paragraph 83 of Plaintiff's 56.1 Counter Statement, Plaintiff argues, and in the process incorrectly concludes, that Maynard's invocation

of Kengle's complaint without investigation is sex stereotyping. Plaintiff then goes on to discuss scholarly articles supporting this proposition.[2] (See Pl. 56.1 Counter Statement, ¶ 83). Similarly, in paragraph 101 of Plaintiff's 56.1 Statement, Plaintiff states, without factual citations, that "Don's judgment call . . . backfired. Even though Rosana didn't want to complaint, her boyfriend a waiter [sic] was unemployed at the time and complained . . ." (See Pl. 56.1 Statement, ¶ 101). These paragraphs are rife with unsupported, conclusory statements and argument, instead of citations to facts in evidence. Such statements are improper, should not be contained within a 56.1 Statement, and must be stricken and/or disregarded by the Court.

Defendants respectfully submit that all paragraphs contained within Plaintiff's Rule 56.1 Statement which do not bear a citation to an admissible form of evidence be stricken pursuant to the overwhelming precedent cited above.

## B. ZARDA'S CONTRADICTORY AFFIDAVIT AND DECLARATION ARE DEFECTIVE AND MUST BE DISREGARDED

At the summary judgment stage, courts routinely disregard affidavits or portions thereof that are not based on personal knowledge, rest on hearsay, contain legal argument, rely on conclusory allegations or are otherwise inadmissible. BellSouth Telecomms. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (conclusory statements insufficient to raise triable issue of material fact and properly disregarded by court); Brink v. Union Carbide Corp., 41 F. Supp. 2d 402, 403-404 (S.D.N.Y. 1997) (striking portion of affidavit because it contained conclusory assertions, hearsay, legal argument and was not based on personal knowledge); Zenni v. Hard Rock Cage Int'l, 903 F. Supp. 644, 649 (S.D.N.Y. 1995) (holding that "unsupported allegation will not suffice to create a genuine issue of material fact" and that motion for summary judgment

---

[2] Plaintiff attempts to utilize his 56.1 Counter Statement as a vehicle to introduce into evidence the work of, amongst others, Kenji Yoshino, in an end-run around Your Honor's Order preventing Yoshino's expert report from becoming evidence. (See Pl. Counter 56.1 Statement ¶¶ 69, 75, 83, 92). Such evidence should be disregarded by this court, as it is argument, not fact.

5

will not be defeated merely on the basis of conjecture or surmise."). "[A] self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment, and 'it will not do to presume the missing facts because without them the affidavits would not establish the injury that they generally allege.' " United Magazine Co. v. Murdoch Magazines Distribution, Inc., 393 F. Supp. 2d 199, 211-12 (S.D.N.Y. 2005) aff'd sub nom. United Magazine Co., Inc. v. Curtis Circulation Co., 279 F. App'x 14 (2d Cir. 2008) (quoting Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-90, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)); see also Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir.1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."). In Lujan, the Supreme Court clarified that "in the context of a summary judgment motion, unlike on a motion to dismiss under Rule 12(b), there is no presumption 'that general allegations embrace those specific facts that are necessary to support the claim.' " United Magazine Co., 393 F. Supp. 2d at 211 (quoting Lujan, 497 U.S. at 890).

Additionally, "[i]t is axiomatic that a party cannot defeat summary judgment by submitting an affidavit that contradicts prior sworn deposition testimony." United Magazine Co., 393 F. Supp. 2d at 212; see Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1493 (2d Cir.1995) (" '[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.' "); see also Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987); Miller v. International Telephone & Telegraph Corp., 755 F.2d 20, 24 (2d Cir. 1985); Reisner v. General Motors Corp., 671 F.2d 91, 93 (2d Cir. 1982); Perma Research and Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969).

Here, in the absence of facts in the record supporting his claims, Plaintiff, in revisionist fashion, resorts to submitting additional evidence in the form of an Affidavit and unsworn Declaration. Plaintiff lays no foundation for the admissibility of numerous statements contained within his self-serving Affidavit and Declaration. Defendants respectfully call the Court's attention to paragraphs 20, 21, 22, 52, 53, 61, 72, 73, 82, 87, 88, 96, 97, 98, 99, 105, 109, 110, 113, 114, 115, 126, 128, 136, and 139 contained in Plaintiff's 56.1 statement and paragraphs 11, 17, 18, 21, 25, 26, 33, 35, 36, 38, 39, 40, 46, 52, 54, 56, 58, 60, 61, 62, 63, 81, 82, 86, 88, 94, 98, 107, and 108 in Plaintiff's 56.1 Counter Statement. Each of the aforementioned paragraphs is supported with a citation to the Affidavit and/or Declaration of Plaintiff Donald Zarda; all of which constitutes inadmissible hearsay. (Pl. 56.1 Statement and Pl. 56.1 Counter Statement, generally). For example, in paragraph 97 of Plaintiff's 56.1 Statement, Plaintiff states: "Zarda's experience with women is that they are cool about homosexuality. Zarda Dec. at 23." (Pl. 56.1 Statement ¶ 97). This alleged statement of fact relies wholly upon the conclusory assertion in the Zarda Declaration that, in his experience, women do not have a problem with his homosexuality. (Zarda Decl. ¶ 23). Both the alleged statement of fact and the assertion in the Zarda Declaration constitute pure inadmissible hearsay.

Significant portions of Mr. Zarda's Affidavit and Declaration do not rely on any facts produced during the previous three (3) years of this litigation. (See Zarda Affidavit and Declaration generally). Even a cursory review of Mr. Zarda's Affidavit and Declaration proves that it violates the Federal and Local Rules of Practice. Paragraphs 3, 4, 5, 9, 10, and 11 of Zarda's Wage Affidavit and paragraphs 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 15, 17, 22, 23, 24, 26, 27, 34, 40, 41, 43, 44, 45, 46, 47 of the Zarda Declaration constitute conclusory allegations, legal argument, and are unsupported by any factual evidence. Rather, Mr. Zarda consistently

endeavors to introduce new facts into evidence through his conclusory and unsubstantiated assertions. For example, in paragraph 23 Plaintiff states: ". . . I did not want to be presumed to be heterosexually attracted to her, so I in front of Rosana (and others in the aircraft if they should have happened to hear) stated that she should not to worry about me because I am gay. (Zarda Decl. ¶ 23). Despite substantial questioning on this issue, this represents the first occasion where Plaintiff asserts that he disclosed he was gay to Orellana in the airplane and that others were around to hear him do so. (See Zarda Dep. pg. 139-140, 173, 228-229). Such a tactic cannot be countenanced as this subject matter is central to this dispute.

Plaintiff's submission of these documents is an improper effort to provide a narrative outside of, or contradictory to, his deposition testimony. By doing so, Plaintiff hopes to introduce additional facts, none of which can be addressed by evidence in the record. By way of example, in paragraphs 12 and 13 of the Zarda Declaration, Mr. Zarda asserts, for the first time, that he found the jokes about his homosexuality distracting and embarrassing and had a discussion with the staff to tone down these jokes. (Zarda Decl. ¶¶ 12, 13). Significantly, Mr. Zarda had the opportunity to testify to these facts at his deposition and failed to do so. Instead, he testified that he was not offended by his co-workers' jokes. (See Zarda Dep. pg. 51, 122, 239-240). Plaintiff cannot be allowed to introduce new facts, all of which are either contradictory to or were not disclosed in his deposition testimony. Allowing Plaintiff to rely on these new found "facts" would be tantamount to allowing Plaintiff to supplement his deposition testimony to self –create issues of material fact solely for the purposes of defeating summary judgment. As such, these purported "facts" must be disregarded by the Court. Plaintiff's scheme is further revealed through citation of Zarda's deposition testimony. In his 56.1 Statements, Plaintiff cherry-picks between Zarda's deposition testimony and Zarda's Declaration and/or Affidavit. (See e.g., Pl.

8

Counter 56.1 Statement ¶¶ 59, 60, 61). Plaintiff's need to cite to a Declaration and/or Affidavit instead of his deposition illustrates the deficient nature of his case.

Tellingly, Mr. Zarda's Affidavit and Declaration blatantly contradict his prior deposition testimony. Defendants respectfully refer the court to paragraphs 6, 11, 12, 13, 17, 18, 23, and 36 in Mr. Zarda's Declaration, which contradict his deposition testimony. (See Zarda Dep. pg. 78, 122, 49, 270, 258, 240-241, 347, 139-140, 173, 228-229, 46). For example, in paragraph 17 Zarda asserts that Maynard requested he paint his cast black, however at his deposition Zarda testified Maynard requested he put a sock over his cast. (See Zarda Decl. ¶ 17; Zarda Dep. pg. 347). Mr. Zarda cannot use such a Declaration, or Affidavit, to defeat summary judgment. See United Magazine Co., 393 F. Supp. 2d at 212 (party cannot defeat summary judgment with an affidavit conflicting deposition testimony). Plaintiff's submits these documents in an effort to re-write his deposition, introducing new, beneficial facts into evidence than those uncovered in the more than three (3) years of litigation in this matter. However, Plaintiff cannot overcome his evidentiary burden by manufacturing new facts through self-created Affidavits and/or Declarations. See Id.

Based on the foregoing, the self-serving and inadmissible statements contained within the Declaration and Affidavit of Zarda should be stricken and/or disregarded by this Court and any citations thereto in Plaintiff's 56.1 Statements should correspondingly be disregarded.

## POINT II

## PLAINTIFF CANNOT DEMONSTRATE THE EXISTENCE OF ANY MATERIAL FACTS IN DISPUTE FOR HIS CLAIMS UNDER TITLE VII OR THE NEW YORK LABOR LAW

### A. PLAINTIFF'S GENDER STEREOTYPING CLAIM FAILS AS A MATTER OF LAW

#### 1. Plaintiff did not Suffer an Adverse Employment Action for his Ostensible Non-Conforming Gender Stereotypes

In his opposition, Plaintiff focuses on the adverse inference prong of the McDonnell Douglas analysis, stating that Plaintiff's claims should survive summary judgment because he indeed suffered an adverse employment action which gives rise to an inference of impermissible discrimination. However, Plaintiff presents no evidence to support such a statement.

Plaintiff argues that the adverse employment action he suffered was his termination. (Pl. Memorandum of Law pg. 4-5). However, Plaintiff admits his termination was in no way related to his professed non-conformance to prevailing male gender stereotypes, and instead asserts his termination was predicated solely upon his sexual orientation. (See Zarda Dep. pg. 134, 215, 278, 281) ("Ray fired me for being gay. . ." Zarda Dep. pg. 215). An adverse employment action is a material component of any claim for discrimination based on non-conforming gender stereotypes, and Plaintiff cannot demonstrate there was an adverse employment action related to his self-proclaimed non-conformance to prevailing male gender stereotypes. See Dawson v. Bumble & Bumble, 398 F.3d 211, 218 (2d Cir. 2005). While Plaintiff can point to his termination as an adverse employment action generally, he has produced no evidence causally linking his termination to his purported non-conformance to prevailing male stereo-types. Further, he cannot cite to any non-conformance to the prevailing male stereotypes. (Zarda Dep. pg. 79-80, 116, 121-122, 364-365) (Zarda is masculine in appearance and actions and behaved as

10

his co-workers did. Zarda Dep. pg. 79-80, 121-122). On that basis alone, Plaintiff's claim for discrimination predicated on non-conforming gender stereotypes must be dismissed.

### 2. Plaintiff's Claim for Gender Discrimination Stemming from his Disclosure of his Sexual Orientation Fails as a Matter of Law

Plaintiff fails to present any evidence or advance any argument substantiating this cause of action is anything more than a sexual orientation discrimination claim re-packaged as a Title VII claim. This theory of discrimination is solely based on the fact that Plaintiff disclosed his sexual orientation to a customer. However, this argument hinges, by definition, on Plaintiff's sexual orientation, not his purported inability to comply with male gender norms. Indeed, Plaintiff's lone argument in opposition is that his termination resulted from his disconfirming the assumption that he is straight because he is masculine in affect, which constitutes impermissible gender stereotyping. However, the act of extricating himself from the construct that he is "straight" is based on his sexual orientation, not gender. Thus, in doing so, Plaintiff merely attempts to bring an otherwise defective sexual orientation claim under Title VII; a theory which is legally invalid. See Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005) (holding Title VII gender stereotyping is not a vehicle for brining sexual orientation discrimination claims). Therefore, Plaintiff fails to state a legally cognizable basis for his Title VII claim and summary judgment is appropriate on this theory of gender stereotyping.

### 3. Plaintiff Fails to Present Any Material Facts in Dispute Regarding his Gender Stereotyping Claim

In his opposition, Plaintiff recognizes that he was fired because a customer complained regarding what they deemed inappropriate behavior on his part. (See Pl. Memorandum of Law, pg. 6-7; Zarda Dep. pg. 235; Kengle Dep. pg. 19-20; Orellana Dep. pg. 47-48). Specifically, at

deposition, when questioned why Maynard terminated his employment, Zarda testified as follows:

> Q    And another one of his motives could have been that Mr. Kengle and
>      Ms. Orellana complained about their jump, is that correct?
> A    Sounds like it, yeah. I mean that's what he told me.

(Zarda Dep. pg. 235). The reasons for terminating Plaintiff were wholly unrelated to any prevailing male gender stereotype. Instead, Plaintiff was terminated for providing poor customer service. (Zarda Dep. pg. 172, 227-228, 235, 243, 281; Maynard Dep. pg. 247, 229). Plaintiff provides no disputed facts to demonstrate otherwise.

Plaintiff mistakenly relies on the Court's decision in Sassaman v. Gamache in support of his defective claims. Again, this case is distinguishable from Sassaman because here Plaintiff was not assumed to have acted a certain way merely because he is a male. See Sassaman v. Gamache, 566 F.3d 307 (2d Cir. 2009). Plaintiff was terminated because customers called and complained about their skydiving experience with him. (See Zarda Dep. pg. 172, 227-228, 235, 243; Maynard Dep. pg. 282).

> Q    So you think he terminated you for the reasons he told you he
>      terminated you, is that correct?
> A    Sounds like that's what I'm saying.

(Zarda Dep. pg. 172). Plaintiff draws an improper parallel between the two cases, indicating that Maynard "crediting the wholly non-credible second-hand complaint" was akin to the assumption made in Sassaman. However, Plaintiff's characterization of the complaint by Kengle as being "non-credible" and "second-hand" is belied by the record. Kengle testified as to having observed Zarda's actions, thus his complaint was predicated on first-hand knowledge. (Kengle Dep. pg.19, 22-23, 27, 62, 66). Plaintiff attempts to minimize the inappropriate behavior complained of by Kengle and Orellana by stating that touching is required for skydiving. (Pl. Memorandum of

12

Law, pg. 7). While admittedly, some touching is required to attach and adjust the harness, there has been no evidence indicating the nature of the touching Kengle and Orellana complained of was involved. Kengle complained that Plaintiff held Orellana's hips for the entire duration of the plane ride. (Kengle Dep. pg. 19, 22, 23, 27). There has been no evidence submitted indicating that this level of touching is required sufficient to discredit the complaint.

Moreover, Plaintiff cannot raise an inference of discrimination based upon what he describes as an insufficient investigation by Maynard. "[O]nly where a plaintiff can point to evidence closely tied to the adverse employment action that could reasonably be interpreted as indicating that discrimination drove the decision, an arguably insufficient investigation may support an inference of discriminatory intent." Sassaman, 566 F.3d at 315. Plaintiff cannot make such a showing. By acting on Kengle's complaint, Maynard simply terminated the only employee for which he had personally received complaints. (Maynard Dep. pg. 66, 69, 297). Maynard did not assume Plaintiff sexually harassed Orellana because he is male. Maynard was well aware of Plaintiff's sexual orientation and it defies logic to presume that despite possession of such knowledge, he assumed Plaintiff would sexually harass a woman. (See Zarda Dep. pg. 78-79). Rather, Maynard concluded that an employee against whom he received multiple complaints should not continue as an employee at his business. It was unnecessary to conclude whether the behavior occurred, only that the complaint was made. See Johnson v. MacDonald, 897 F. Supp. 2d 51 (E.D.N.Y. 2012) (dismissing plaintiff's claim despite his assertions the customer complaints were without merit: "while he devotes large portions of [his] Cross Motion to explaining why the customer allegations were without merit, plaintiff does not deny that these allegations were made").

Maynard was aware of Plaintiff's sexual orientation as far back as 2001 and Plaintiff's termination was undertaken in direct response to a complaint regarding Plaintiff's specific conduct on a jump. As such, there can be no inference of discrimination based on gender stereotyping and Plaintiff's claims must be dismissed with prejudice.

## B. NEW YORK LABOR LAW CLAIMS

### 1. Minimum Wage Under the NYLL

New York Labor Law requires employers to pay their employees the minimum wage for all hours worked. See N.Y. Lab. Law § 652 (McKinney 2012). Despite Plaintiff's threadbare assertion to the contrary, an employer may fulfill their obligation to pay the employee minimum wage by paying them on a piece-rate basis. N.Y. Lab. Law § 190; 12 N.Y.C.R.R. § 142-2.16. Pursuant to New York Codes Rules and Regulations § 142-2.16, when an employee is paid on piece-work basis, his regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's earnings. 12 N.Y.C.R.R. § 142-2.16.

Plaintiff clearly received in excess of the minimum hourly rate for each week he worked for Skydive Long Island; any argument to the contrary is unavailing. Plaintiff does not dispute the amounts of money he was paid each week at SDLI. (See Plaintiff's Counter 56.1 Statement, ¶¶ 109-123). Indeed, Plaintiff's minimum wage claim is predicated solely on Plaintiff's assertion that he did not receive minimum wage for each day in which he worked at SDLI. (See Zarda Wage Affidavit, Plaintiff's Memorandum of Law, pg. 8) (emphasis added). However, contrary to Plaintiff's assertion, pursuant to New York Labor Law, minimum wage compensation is not calculated per day, rather, it is calculated on a per week basis. See e.g., Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *6 (S.D.N.Y. 2012) (calculating plaintiff's hourly wage by dividing plaintiff's weekly salary by the number of hours worked per week). Plaintiff is only

entitled to a weekly wage which, when divided by the total hours worked in that week, equates to $7.25 per hour or more.[3] See 12 N.Y.C.R.R. § 142-2.16. Plaintiff received such a wage.

Plaintiff was paid in excess of the New York State minimum wage each week in which he worked at SDLI. Plaintiff was compensated anywhere from $370 to $1,510 per week during his tenure with SDLI. (Def. Ex. 7). Even if Plaintiff's unsupported allegation that he worked an average of twelve (12) hours per day were true, which Defendants do not concede, Plaintiff would still have been compensated in excess of the minimum wage. Simple division indicates that a weekly wage of $600,[4] with a 72 hour work week, provides an hourly compensation of $8.33. Additionally, if Plaintiff worked an eighty (80) hour work week, a scenario which is not supported by the facts in evidence, Plaintiff would have received an hourly wage of $7.50, an amount which still exceeds the minimum rate of $7.25.

Consequently, there exists no material fact in dispute pertaining to Plaintiff's minimum wage claim, and therefore, the claim must be dismissed as a matter of law.

## 2. Overtime Under the NYLL

While advancing the broad notion that he opposes Defendants' motion in its entirety, Plaintiff presents no facts and asserts no argument in opposition to Defendants' motion for

---

[3] Pursuant to New York Labor Law, the minimum wage in New York was $7.25 in 2010 and $7.15 in 2009. (Def. Ex. 8).

[4] While the minimum weekly wage Plaintiff received was $370, this compensation only covered Plaintiff for one (1) day of work in 2010 and four (4) days of work in 2009. Plaintiff received $370 for the pay period June 29, 2009 to July 5, 2009. (See Def. Ex. 7). However, Plaintiff could only have worked a maximum of four (4) days, as on July 2, 2009, Plaintiff fractured his ankle, preventing him from jumping the remainder of that pay period. (See Zarda Dep. pg. 73, 75). For that pay period he would have earned an hourly wage, assuming 12 hour days, of $7.70 (370/48). Additionally, Plaintiff was compensated $370 for the pay period June 21, 2010 through June 27, 2010. However, Plaintiff was suspended on June 21, 2010, and therefore could not have worked more than one (1) day for that pay period. (Zarda Dep. pg. 36, 37, 39). Plaintiff therefore earned an hourly wage, assuming a 12 hour day, of $30.83 (370/12). Plaintiff additionally received a weekly wage of $410 for the pay period May 11, 2009 through May 17, 2009. However, Plaintiff did not commence work with SDLI in 2009 until May 15, 2009, and therefore could not have worked more than two (2) days in that pay period. (Zarda Dep. pg. 78). He would have earned an hourly wage, assuming 12 hour days, of $17.08 (410/24). Defendants therefore use the lowest wage Plaintiff received for a full week of work, $600, during his tenure at SDLI to demonstrate Plaintiff the minimum hourly wage for all hours worked.

summary judgment regarding Plaintiff' overtime claims arising under the New York Labor Law. As such, Plaintiff's claims must be dismissed.

**POINT III**

**PLAINTIFF'S SEXUAL ORIENTATION CLAIM FAILS AS A MATTER OF LAW**

A.  **PLAINTIFF'S CLAIM FAILS AS A MATTER OF LAW**

### 1. Hostile Work Environment

To establish a viable hostile work environment claim, Plaintiff must allege conduct that is "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Gallagher v. Delaney, 139 F.3d 338, 346-47 (2d Cir. 1998) (internal citations omitted). Plaintiff must demonstrate that the conduct was intimidating, hostile, or offensive. Id. "[A] reasonable person would have to find the environment hostile or abusive, and the victim must have subjectively so perceived it." Id. "Isolated incidents of discriminatory comments or conduct is not sufficient to establish a hostile work environment." Viruet v. Citizen Advice Bureau, 2002 WL 1880731 (S.D.N.Y. Aug. 15, 2002); see Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (" 'simple teasing,' ... offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' ").

Plaintiff presents no opposition to Defendants' motion for summary judgment on his hostile work environment claim beyond stating that the "jokes bothered him." However, Plaintiff's position is contradicted by his deposition testimony. Specifically, when Winstock referred to Plaintiff as "Gay Don," Plaintiff testified "I wasn't offended by that." (Zarda Dep. pg. 51).

While Plaintiff testified that jokes regarding his sexual orientation were made at SDLI, there is no evidence indicating these comments were either sufficiently severe or pervasive as to alter the conditions of his work environment or, for that matter, were even unwelcome. (See Zarda Dep. pg. 48-49, 51, 270-271, 370). Rather, Plaintiff concedes his sexual orientation was discussed in a fun, joking manner. (Zarda Dep. pg. 51, 239-240, 270-271). Importantly, and perhaps most tellingly, Plaintiff also engaged in the banter, referring to himself as "gay Don" and making jokes about being "gay Don."  (Maynard Dep. pg. 137). The light-hearted joking, in which Plaintiff participated, regarding his sexual orientation was neither hostile, nor abusive, and did not alter his work environment. See Gallagher, 139 F.3d at 346-47; Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (holding teasing, offhand comments, and isolated incidents do not amount to discriminatory changes in the terms and conditions of employment).

Moreover, a hostile work environment cannot exist if Plaintiff does not find the alleged comments to be subjectively offensive. Gallagher, 139 F. 3d at 346-347. Plaintiff concedes he did not find the comments made by his peers regarding his sexual orientation to be offensive. (Zarda Dep. pg. 51, 239-240; Pl. Counter 56.1 Statement ¶ 37) (referring to Winstock calling him Gay Don: "I wasn't offended by that." Zarda Dep. pg. 51). This fact is outcome-determinative, as Plaintiff admitted he was not offended by the comments of his peers, by definition, he cannot maintain a claim for sexual orientation discrimination based on a purportedly hostile work environment. Plaintiff attempts to overcome these damning admissions by submitting a Declaration wherein he, for the first time, and in contravention to his deposition testimony, indicates he may have been offended by the joking regarding his sexual orientation.[5] (See Zarda Decl. ¶¶ 12, 13). Plaintiff cannot have it both ways. These statements contradict Plaintiff's prior

---

[5] The Zarda Declaration is self-serving, pure, inadmissible hearsay, does not rely on any facts produced during the previous three (3) years of this litigation, and attempts to introduce new facts into evidence through conclusory assertions. Such "evidence" may not be relied on as facts in a 56.1 Statement.

sworn deposition testimony where he admitted to not being offended by the joking that occurred amongst his peers at SDLI. (Zarda Dep. pg. 51, 122, 239-240, 258) (Zarda generally not offended by banter about his sexual orientation or pink clothing). Plaintiff even admitted this statement of fact in his Counter 56.1 Statement. (Pl. Counter 56.1 Statement, ¶ 41). This eleventh-hour attempt to salvage Plaintiff's hostile work environment claim is insufficient to defeat summary judgment. Plaintiff cannot raise an issue of fact sufficient to defeat summary judgment by submitting a self-serving Declaration contradicting his prior sworn deposition testimony. See Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995) ("[i]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment). As such, there is no dispute of material fact and Plaintiff's hostile work environment claim must be dismissed.

**2. Disparate Treatment**

i. *Prima Facie* Case

Plaintiff fails to meet his burden under the McDonnell Douglas analysis, as he cannot establish he was terminated under circumstances giving rise to an inference of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Indeed, Plaintiff does not dispute that Maynard was aware of Plaintiff's sexual orientation upon his 2009 hire and 2010 termination. (Pl. Counter 56.1 Statement ¶¶ 21, 28; Zarda Dep. pg. 54, 62-63, 78, 79). However, like here, where the decision maker was both the person to hire and to fire the employee, "it is difficult to impute to [that person] an invidious motivation that would be inconsistent with the decision to hire. Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir.1997). Given that Maynard decided to hire Plaintiff, with full knowledge of his sexual orientation, and subsequently decided to fire him, there exists no plausible inference of discrimination. Id.

Plaintiff's only attempt to overcome the well-settled, same-actor inference is to argue that Maynard was not acting on his own biases, but on the adopted biases of his customers. (Pl. Memorandum of Law, pg. 8). In so arguing, Plaintiff states that Maynard was not acting on his own biases when he terminated Plaintiff. (Pl. Memorandum of Law, pg. 8). This is a critical admission by Plaintiff. Plaintiff claims that when Maynard terminated Plaintiff, he did not do so because he had any personal discriminatory animus against homosexuals. This concession alone is sufficient to warrant dismissal of Plaintiff's sexual orientation discrimination claim. Factual evidence further confirms that Kengle and Orellana did not maintain a discriminatory bias against Plaintiff. In fact, to the contrary, Orellana testified to having several gay friends and being pro-gay marriage. (Orellana Dep. pg. 63-65). Additionally, Orellana testified that the basis of her complaint was not that Zarda disclosed he was gay, but the fact that he shared personal information with her, made her uncomfortable, and ruined the skydive experience. (Orellana Dep. pg. 52, 54, 55, 60). Kengle testified he has known and has worked with gay people. (Kengle Dep. pg. 40-41). Kengle's complaint was predicated on his belief that Zarda was touching Orellana in an inappropriate manner, an action which is unrelated, and perhaps contradictory to Zarda's sexual orientation. (Kengle Dep. pg. 19-20, 22, 23, 27, 62, 66; Zarda Dep. pg. 360). This evidence confirms that Kengle and Orellana harbored no discriminatory bias against Plaintiff because he is gay, rather, they were disappointed by the level and manner of service they received from him. Consequently, Maynard could not have acted on any purported unlawful bias maintained by his customers in deciding to terminate Plaintiff's employment.

### ii. Plaintiff was Terminated for a Legitimate Business Reason

Assuming, *arguendo*, this Court is inclined to find Plaintiff's termination occurred under circumstances giving rise to an inference of impermissible discrimination, Defendants have a

legitimate, non-discriminatory reason for Plaintiff's termination. <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). Plaintiff's termination was the result of a singular event - a customer complaint regarding his behavior. (Zarda Dep. pg. 172, 227-228, 235, 243, 281). Additionally, courts "may not second-guess an employer's non-discriminatory business decisions, regardless of their wisdom." <u>Viruet v. Citizen Advice Bureau</u>, 01 CIV 4594 AJP, 2002 WL 1880731, at *20 (S.D.N.Y. Aug. 15, 2002); <u>see Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 102 (2d Cir. 2001) (courts should not act as "super personnel departments" second-guessing an employer's business judgment); <u>Tarshis v. Riese Org.</u>, 211 F.3d 30, 37 (2d Cir. 2000) ("Title VII . . . [does] not grant courts authority to second-guess the wisdom of corporate business decisions"); <u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1116 (2d Cir. 1988) (holding "it is not the function of a fact-finder to second-guess business decisions"); <u>Scaria v. Rubin</u>, 94 Civ. 333, 1996 WL 389250 at *8 (S.D.N.Y. July 11, 1996) (Peck, M.J.) ("an employer has discretion even to make a bad business decision . . . so long as that decision is not motivated by discrimination"), <i>aff'd</i>, 117 F.3d 652 (2d Cir. 1997).

A customer complaint is a legitimate business reason for terminating Plaintiff. <u>See Johnson v. MacDonald</u>, 897 F. Supp. 2d 51 (E.D.N.Y. 2012) (dismissing plaintiff's claim because he offered no evidence showing defendants non-discriminatory explanation, i.e. customer complaints, was pretextual: "while he devotes large portions of [his] Cross Motion to explaining why the customer allegations were without merit, plaintiff does not deny that these allegations were made"). It is undisputed that Plaintiff was unable to provide Defendants' customers with an enjoyable experience. (Zarda Dep. pg. 201-202; Orellana Dep. pg. 49, 100-101). Instead, Kengle and Orellana had an unpleasant experience because Plaintiff put his hands on Orellana's hips, rested his chin on her shoulder, and, in the course of doing so, disclosed

intimate details of his personal life. (Orellana Dep. pg. 47-49, 89, 100-101; Kengle Dep. pg. 23-24, 62-63, 66). Kengle and Orellana's complaint is the reason Plaintiff was terminated. (Zarda Dep. pg. 40, 172, 218, 227-228, 235, 243, 281; Maynard Dep. pg. 282). Defendants' decision to terminate Plaintiff was a business decision. Defendants simply decided to eliminate an employee who failed to provide the customer with an enjoyable experience. This decision was based on SDLI's desire to please its customer base, not based upon Plaintiff's sexual orientation. Plaintiff is the only instructor about whom Maynard has personally received complaints in his twenty (20) years at SDLI. (Maynard Dep. pg. 66, 69, 297). Maynard properly responded to the complaint with immediate corrective action. Plaintiff was terminated for a legitimate, non-discriminatory reason and his claim for sexual orientation discrimination must be dismissed.

### iii. Pretext

Plaintiff, "in order to defeat summary judgment, must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by ... discrimination." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997). "To get to the jury, it is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). If Plaintiff fails to convincingly challenge Defendants' legitimate business reason, then summary judgment is appropriate. Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001).

To show that Defendants' reason was a pretext for discrimination, Plaintiff must produce evidence to overcome the effect of Maynard's having made both the decision to hire and fire Plaintiff, evidence which "strongly suggest[s] that invidious discrimination was unlikely." Brennan v. Metro. Opera Ass'n, Inc., 284 A.D.2d 66, 71, 729 N.Y.S.2d 77, 83 (2001) (quoting

Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560, cert. denied, 525 U.S. 936, 119 S.Ct. 349, 142 L.Ed.2d 288). Plaintiff cannot meet this burden. Plaintiff advances no evidence that Maynard was motivated by discriminatory animus and his assertions of pretext are insufficient to overcome the same-actor inference. Plaintiff simply states that pretext must exist because Plaintiff is gay, Maynard did not investigate, there were legitimate safety reasons for touching Orellana, and Maynard refused to use the waiver to defend Plaintiff. (See Pl. Memorandum of Law, pg. 5-6). However, none of these purported reasons overcomes either the same actor inference or Defendants' legitimate business reason for terminating Plaintiff. Indeed the fact that Plaintiff is gay, and that Maynard was aware Plaintiff is gay, is the reason why there is no invidious discrimination – Maynard was aware of Plaintiff's sexual orientation when he made the decision to both hire and fire him. This fact precludes a finding of pretext. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) ("when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation").

Plaintiff opines that Maynard conducted no investigation into the Kengle complaint prior to acting; however, this statement is belied by the record. Maynard investigated the complaint by discussing the behavior with Kengle and Zarda, and by reviewing the video of the jump. (Maynard Dep. pg. 182-183, 199). This investigation led Maynard to suspend and ultimately terminate Plaintiff. (Maynard Dep. pg. 187, 196, 282). Even if, in the unlikely event, this investigation is somehow deemed insufficient, such an investigation alone does not constitute discriminatory animus without evidence indicating discrimination drove the decision. See Sassaman v. Gamache, 566 F.3d 307, 315 (2d Cir. 2008) ("[O]nly where a plaintiff can point to evidence closely tied to the adverse employment action that could reasonably be interpreted as

indicating that discrimination drove the decision, an arguably insufficient investigation may support an inference of discriminatory intent."). Plaintiff does not present any evidence, let alone that which is closely tied to his suspension and termination, sufficient to indicate discrimination drove the decision. Rather, the facts conclusively demonstrate that Maynard received a complaint regarding Plaintiff's performance and acted in response.

It is undisputed that touching is required to properly perform a tandem skydive; however, the touching complained of by Kengle and Orellana (which is the basis of Plaintiff's termination) was more than that typically associated with attaching or adjusting the harness. Kengle complained that Zarda held Orellana's hips for the <u>entire</u> plane ride. (Kengle Dep. pg. 19-20, 22-23, 27) (emphasis added). They additionally complained that Zarda rested his head on Orellana's shoulder. (Orellana Dep. pg. 47-48, 89). While the tandem instructor and passenger are in close proximity, no evidence has been submitted showing it is necessary for the tandem instructor rest his chin on the passenger's shoulder to properly perform a skydive. While Plaintiff disputes that he actually engaged in this behavior, it is undisputed that Kengle complained of it to Maynard. (<u>See</u> Pl. Counter 56.1 Statement ¶ 68). Maynard acted based on the complaint from the passengers that this activity occurred. (Maynard Dep. pg. 187, 196). In suspending, and ultimately terminating Plaintiff, Maynard made a business decision based on a customer complaint, thereby eliminating the only tandem instructor about whom Maynard had ever received a complaint. (Maynard Dep. pg. 66, 69, 297). There is no evidence that this proffered reason is in any way false or that Maynard was actually motivated by discriminatory intent.

Plaintiff further claims Defendants' failure to use its legal waiver to shield Plaintiff from the accusations from Kengle is evidence of discriminatory intent. However, this argument simply has no merit. Maynard received a complaint that Plaintiff touched a customer inappropriately and

in addition, shared personal information which made her uncomfortable. (Maynard Dep. pg. 182-183). However, inappropriate touching is not protected by the waiver. (See Ex. A annexed to Decl. of Antollino). The waiver discloses the requirement that the tandem instructor and passenger be in close proximity, it does not require the passenger to withstand touching which they deem to be inappropriate. (Ex. A annexed to Decl. of Antollino). Moreover, the waiver does not address that the instructor is empowered to discuss personal information during the jump. (Ex. A annexed to Decl. of Antollino). Based on the content of the waiver, it has no applicability to Plaintiff's termination and therefore, cannot be utilized to demonstrate discriminatory animus. The legal waiver was not designed to indemnify tandem instructors from complaints about their behavior on jumps and Maynard's failure to invoke it for such a purpose cannot be construed as discriminatory intent. (See Ex. A to Decl. of Antollino). Any utilization of the waiver in this manner would be an impermissible expansion of its functionality.

In his memorandum and 56.1 Statements, Plaintiff devotes significant effort to establishing that the behavior Kengle and Orellana complained of did not occur. However, Plaintiff does not dispute Kengle complained of the behavior and Maynard reacted to the complaint in terminating Plaintiff. (See Zarda Dep. pg. 172, 227-228, 235, 243, 281). Plaintiff fails to articulate any evidence other than his assertion that he did not act as Kengle and Orellana complained, and therefore has failed to show Defendants terminated him for reasons other than legitimate business reasons. See Johnson v. MacDonald, 897 F. Supp. 2d 51 (E.D.N.Y. 2012) (holding plaintiff's circumstantial evidence of discrimination was insufficient to overcome defendants legitimate reason for terminating plaintiff – customer complaints).

Defendants produced admissible evidence sufficient to rebut any inference of invidious discrimination; however, even if evidence of such discrimination existed, Defendants had a

24

legitimate business reason for terminating Plaintiff – a customer complaint. Plaintiff has not presented material facts in dispute which indicate that Defendants were motivated by a discriminatory animus and therefore, Plaintiff's claim must be dismissed.

### B.  **PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT FAILS**

Plaintiff's only tangible basis for bringing his cross-motion is that Maynard discriminated against Plaintiff by crediting the discriminatory preferences of his customers. (Pl. Memorandum of Law, pg. 8). However, there is no evidence to suggest that Kengle and Orellana maintained any discriminatory bias against Plaintiff because of his sexual orientation. As previously discussed, both Orellana and Kengle testified to having gay friends and not holding discriminatory animus towards homosexuals. (Orellana Dep. pg. 63-65; Kengle Dep. pg. 40-41). Additionally, Orellana and Kengle testified that the basis of her complaint was not that Zarda was gay, but that behaved inappropriately during the jump through inappropriate touching and disclosure of personal information. (Orellana Dep. pg. 52, 54, 55; Kengle Dep. pg. 19-20, 22, 23, 27, 62, 66; Zarda Dep. pg. 360). Even if this evidence does not conclusively demonstrate that Kengle and Orellana did not possess discriminatory bias, this evidence at least presents a material issue of fact, if not confirms, that Kengle and Orellana were not discriminatorily biased against Plaintiff because he is gay. Further, Plaintiff was terminated because of a customer complained about behavior during their jump. Plaintiff does not dispute that the customers complained about his behavior, nor does he dispute that the complaint was the basis for his termination. (See Zarda Dep. pg. 172, 227-228, 235, 243, 281) ("Q . . . one of his motives could have been that Mr. Kengle and Ms. Orelana complained about their jump . . . A Sounds like it, yea. At least that's what he told me." Zarda Dep. pg. 235). Indeed, Plaintiff's termination was

predicated on a legitimate business decision, and Plaintiff has provided no evidence to the contrary.

As a result of the foregoing, Plaintiff's cross-motion for summary judgment fails and should be dismissed.

**POINT IV**

**PLAINTIFF CANNOT MEET HIS BURDEN ESTABLISHING THE
NECESSARY ELEMENTS OF A SPOLIATION CLAIM**

Spoliation is " 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.' " Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir.2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999)). "Although a district court has broad discretion in crafting a proper sanction for spoliation, . . . the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." West, 167 F.3d at 779 (citation omitted). "A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim." Centrifugal Force, Inc. v. Softnet Comme'n, Inc., 783 F. Supp. 2d 736, 740-41 (S.D.N.Y. 2011) (quoting Byrnie, 243 F.3d at 109). "These elements are (1) that 'the party having control over the evidence . . . had an obligation to preserve it at the time it was destroyed'; (2) that the evidence was 'destroyed with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense." Id. (quoting Byrnie, 243 F.3d at 107-109) (alteration in original). Here, Plaintiff cannot establish any of these elements are present.

Plaintiff's enfeebled argument that the imposition of sanctions are somehow appropriate is predicated on Plaintiff's ability to produce a single e-mail from June 29, 2009; one (1) year before his termination, complimenting Plaintiff on his jump, a document Defendants did not

26

have in their possession. (See Ex. F annexed to Decl. of Zarda). However, Plaintiff provides no evidence demonstrating when this e-mail was allegedly destroyed, if it was destroyed with a "culpable state of mind", or that this information is even relevant to the underlying dispute. Lauren Callanan testified, regarding SDLI's document retention policy, that SDLI did not employ a formal policy but generally kept legal documents while e-mails would tend to be disregarded. (Callanan Dep. pg. 16). The fact that Defendants did not have an e-mail in their possession almost two (2) years after it was generated is hardly cause for sanctions. Moreover, Defendants have not and do not dispute that Plaintiff was a talented tandem instructor. (See Maynard Dep. pg. 149). However, this case does not hinge on Plaintiff's technical abilities, rather it revolves around Plaintiff's behavior and conversations during a specific jump. (See generally Amended Complaint; Maynard Dep. pg. 183, 187, 196, 282). The existence of this e-mail is irrelevant to the causes of action in this matter.

Plaintiff cites to Zublake v. UBS Warburg LLC, 229 F.R.D. 422 (S.D.N.Y. 2004), in support of the proposition that sanctions are appropriate. However, Zublake is inapposite. In Zublake, there was evidence of and the Court found that Defendants had deleted relevant e-mails after the commencement of the litigation by Zublake, and after being advised of the litigation hold. Zublake, 229 F.R.D. at 429. Here, however, no such evidence exists. Plaintiff merely seeks an adverse inference because he is upset that Defendants did not retain, in the normal course of business, an email that he desires. There exists no evidence Defendants' search was ineffective; Lauren Callanan testified to searching the computers for documents and e-mails regarding Plaintiff. (Callanan Dep. pg. 12-13). Plaintiff seeks production of a document that Defendants did not maintain in the normal course of business. Defendants operate a skydiving facility, not an office, and therefore do not have the e-mail correspondence and electronic documents that

27

Plaintiff so desperately seeks. Plaintiff's fervor confirms the fallacious nature of his arguments in this litigation and demonstrates the tenuous nature of his claims. The fact remains, Plaintiff has failed to produce sufficient evidence to support his claims and this is a last-ditch attempt at salvaging his claims.

Consequently, Plaintiff cannot meet the necessary burden to impose sanctions on Defendants for spoliation, and Plaintiff's motion for sanctions must be denied.

## IV.    CONCLUSION

For all the foregoing reasons, this Court should: (1) grant Defendants' Fed. R. Civ. P. 56 Motion for Summary Judgment; (2) dismiss this action in its entirety with prejudice; and (3) dismiss Plaintiff's cross-claim in its entirety.

Dated: Bohemia, New York
       May 3, 2013

ZABELL & ASSOCIATES, P.C.
*Attorneys for Defendants*

By: _____
       Saul D. Zabell, Esq.
       Amanda R. Griner, Esq.
       Zabell & Associates, P.C.
       1 Corporate Drive, Suite 103
       Bohemia, New York 11716
       Tel.: (631) 589-7242
       Fax: (631) 563-7475
       szabell@laborlawsny.com