UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

MELISSA ZARDA and WILLIAM MOORE,                    10-CV-04334 (SJF) (AYS)
co-independent executors second of the estate
of DONALD ZARDA

                              Plaintiffs,

      - against –

RAYMOND MAYNARD
as the predecessor in interest, the sole shareholder
and alter ego to ALTITUDE EXPRESS, INC., and
RAYMOND MAYNARD, individually,

                              Defendants.
-----------------------------------------------------------------------X


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**


ZABELL & COLLOTTA, P.C.
One Corporate Drive, Suite 103
Bohemia, New York 11716
T: (631) 589-7252
F: (631) 563-7475

*Attorneys for Defendant Raymond Maynard*

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................................. ii

I.   Preliminary Statement ............................................................................... 1

II.  Brief Statement of Procedural History ....................................................... 2

   A.  Prior District Court Proceedings ...................................................... 2

   B.  The Appellate Proceedings .............................................................. 5

   C.  The Instant Proceedings .................................................................. 6

III. Standard of Review ................................................................................... 7

IV.  Argument .................................................................................................. 10

   A.  Plaintiffs' First Cause of Action
      arising under Title VII Should be Dismissed .................................... 10

   B.  Plaintiffs' Second Cause of Action Should be Dismissed ................. 14

   C.  Plaintiffs' Third Cause of Action arising under New York's
      Business Corporation Law § 1006 Should be Dismissed ................... 16

   D.  Plaintiffs' Fourth Cause of Action Should be Dismissed .................. 24

V.   Conclusion ............................................................................................... 26

## TABLE OF AUTHORITIES

**Federal Cases**

*Altitude Express, Inc. v. Zarda,*
    139 S. Ct. 1599 (2019) ................................................................................ 5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................... 6, 7

*Battino v. Cornelia Fifth Ave., L.L.C.,*
    861 F. Supp. 2d 392 (S.D.N.Y. 2012) .................................................. 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................. 6

*Bostock v. Clayton Cnty.,*
    140 S. Ct. 1731 (2020) ................................................................. 5, 12, 23

*Bostock v. Clayton County,*
    139 S. Ct. 1599 (2019) .............................................................................. 5

*Burlington Indus. v. Ellerth,*
    524 U.S. 742 (1998) ................................................................................ 11

*Careccia v. MacRae,*
    No. 05-CV-1628 (ARR), 2005 U.S. Dist. LEXIS 48970 (E.D.N.Y. July 15, 2005) .............. 16

*Citizens United v. Schneiderman,*
    882 F.3d 374 (2d Cir. 2018) .................................................................... 7

*De Jesus v. Sears, Roebuck & Co.,*
    87 F.3d 65 (2d Cir. 1996) ...................................................................... 17

*Dearth v. Collins,*
    441 F.3d 931 (11th Cir. 2006) ............................................................... 11

*EED Holdings v. Palmer Johnson Acq. Corp.,*
    387 F. Supp. 2d 265 (S.D.N.Y. 2004) .............................................. 16, 17

*Elias v. Rolling Stone L.L.C.,*
    872 F.3d 97 (2d Cir. 2017) ...................................................................... 6

*Hamlen v. Gateway Energy Servs. Corp.,*
    No. 16-CV-3526 (VB) (JCM), 2017 U.S. Dist. LEXIS 205799 (S.D.N.Y. Dec. 8, 2017) .... 17

*Holloway v. King,*
    161 F. App'x 122 (2d Cir. 2005) .............................................................. 7

*Kim v. Kimm,*
    884 F.3d 98 (2d Cir. 2018) ...................................................................... 6

*Klein & Co. Futures, Inc. v. Bd. of Trade,*
    464 F.3d 255 (2d Cir. 2006) ............................................................... 7-8

*Lafferty v. Owens, Schine & Nicola, P.C.,*
    No. 3:09cv1045 (MRK), 2012 U.S. Dist. LEXIS 5276 (D. Conn. Jan. 18, 2012) ................ 11

*Mandell v. Cnty. of Suffolk & John Gallagher,*
    316 F.3d 368 (2d Cir. 2003) ............................................................... 11

*McGill v. Univ. of Rochester,*
    600 F. App'x 789 (2d Cir. 2015) ......................................................... 8, 10

*Miner v. Town of Cheshire,*
    126 F. Supp. 2d 184 (D. Conn. 2000) ..................................................... 11

*Patterson v. County of Oneida,*
    375 F.3d 206 (2d Cir. 2004) ............................................................... 11

*Rojas v. Roman Catholic Diocese of Rochester,*
    660 F.3d 98 (2d Cir. 2011) ................................................................. 8

*Secured Sys. Tech. v. Frank Lill & Son, Inc.,*
    No. 08-CV-6256, 2012 U.S. Dist. LEXIS 141845 (W.D.N.Y. Oct. 1, 2012) ................ 20-21

*Simonton v. Runyon,*
    232 F.3d 33 (2d Cir. 2000) ................................................................. 4

*Spiegel v. Schulmann,*
    604 F.3d 72 (2d Cir. 2010) ................................................................ 11

*Tolbert v. Smith,*
    790 F.3d 427 (2d Cir. 2015) ............................................................... 11

*Tomka v. Seiler Corp.,*
    66 F.3d 1295 (2d Cir. 1995) ............................................................... 10

*Trevino v. Merscorp, Inc.,*
    583 F. Supp. 2d 521 (D. Del. 2008) ....................................................... 21

*Two Kids from Queens, Inc. v. J&S Kidswear, Inc.,*
    No. 09-CV-3690 (DRH) (AKT), 2010 U.S. Dist. LEXIS 10620, 2010 WL 475319 ............. 17

*Walker v. Time Life Films, Inc.,*
    784 F.2d 44 (2d Cir. 1986) ................................................................. 7

*Wolo Mfg. Corp. v. ABC Corp.,*
    349 F. Supp. 3d 176 (E.D.N.Y. 2018) .................................................... 6, 22

*Worth v. Tyer,*
    276 F.3d 249 (7th Cir. 2001) ............................................................... 11

*Xue Ming Wang v. Abumi Sushi, Inc.*,
   262 F. Supp. 3d 81 (S.D.N.Y. 2017) ...................................................................... 15

*Zarda v. Altitude Express*,
   855 F.3d 76 (2d Cir. 2017) ............................................................... 4, 15, 20

*Zarda v. Altitude Express, Inc.*,
   883 F.3d 100 (2d Cir. 2018) ........................................................... 4-5, 12, 16

*Zarda v. Altitude Express, Inc.*,
   883 F.3d 100, 107 (2d Cir. 2018) ........................................................... 5

**State Cases**

*TNS Holdings Inc. v. MKI Sec. Corp.*,
   92 N.Y.2d 335 (1998) .................................................................. 16-17

**State Statutes**

N.Y. Bus. Corp. Law § 1006 .................................................................. 15

2019 N.Y. ALS 580, 2019 N.Y. Laws 580, 2019 N.Y. Ch. 580, 2019 N.Y. AB 562 ................ 21

**Rules**

Fed. R. App. P. 12 .................................................................. 13

Fed. R. Civ. P. 12 ........................................................... 6, 7, 12, 17

Sup. Ct. R. 14 .................................................................. 13

## I.   PRELIMINARY STATEMENT

Defendant, Raymond Maynard, sued in his individual capacity as well as the alleged "predecessor in interest", the sole shareholder and claimed "alter ego" of the now defunct Altitude Express, Inc., by and through his attorneys, Zabell & Collotta, P.C., respectfully submits the instant Memorandum of Law in support of his application, made pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 12(b)(6). Mr. Maynard seeks dismissal, with prejudice, of all claims pending against him contained in the Second Amended Complaint [ECF Doc. No. 280], interposed by Plaintiffs Melissa Zarda and William Moore, co-independent executors of the estate of Donald Zarda ("Plaintiffs").

As set forth below, Plaintiffs' Second Amended Complaint is factually and legally insufficient to withstand the instant application. Plaintiffs' claim of unlawful discrimination premised upon gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), has already been adjudicated by a jury within the context of the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL"). The jury properly found that Mr. Zarda's sexual orientation was not a factor in his termination from Altitude Express, Inc. d/b/a "Skydive Long Island" ("Altitude Express"). Here, nothing has changed. Plaintiffs set forth no new factual allegations to change this outcome. No new evidence exists, nor can it: Mr. Zarda is deceased. Plaintiffs now seek to hold Mr. Maynard individually liable and as the alter ego of Altitude Express without regard to controlling precedent and statutory language, all of which confirms Title VII does not allow for individual liability, alter ego or otherwise.

Plaintiffs' remaining claims are similarly imperiled. Mr. Maynard was absolved of the charges of unlawful discrimination at trial. The subsequent decisions of the Second Circuit and the U.S. Supreme Court did not, in any way, alter the jury's verdict. The mere fact that Mr. Maynard's

1

name remained in the caption is not, standing alone, a proper basis for claiming his liability for costs. Moreover, Plaintiffs' claims grounded in New York's Business Corporation Law § 1006 and New York's Uniform Voidable Transactions Act have no application here. In any event, they are plead in conclusory fashion, merely restating the elements of a cause of action. They, too, are improper grounds for the relief Plaintiffs now seek.

## II.   BRIEF STATEMENT OF PROCEDURAL HISTORY

### A. Prior District Court Proceedings

On September 23, 2010, Donald Zarda commenced this action by the filing of his original Complaint [ECF Doc. No. 1]. In the original Complaint, Mr. Zarda set forth four (4) causes of action against Altitude Express and Mr. Maynard: (1) unlawful discrimination based on nonconforming gender stereotypes in violation of Title VII; (2) unlawful discrimination premised on sexual orientation discrimination in violation of the NYSHRL; (3) overtime and minimum wage violations in contravention of the Fair Labor Standards Act, 29 U.S.C.S. § 201, *et seq.* ("FLSA"); and (4) overtime violations in contravention of the New York Labor Law, N.Y. Lab Law §§ 650 *et seq.* ("NYLL")[ECF Doc. No. 1]. Altitude Express and Mr. Maynard filed their responsive pleading on January 10, 2011 [ECF Doc. No. 13].

On March 11, 2011, Mr. Zarda filed hist First Amended Complaint against Altitude Express and Mr. Maynard [ECF Doc. No. 28]. This pleading alleged six (6) causes of action against Altitude Express and Mr. Maynard: (1) unlawful discrimination based on nonconforming gender stereotypes in violation of Title VII; (2) unlawful discrimination premised on sexual orientation in violation of the NYSHRL; (3) unlawful discrimination premised on gender in violation of the NYSHRL; (4) overtime and minimum wage violations in contravention of the FLSA; (5) overtime

2

violations in contravention of the NYLL; and (6) minimum wage violations in contravention of the NYLL [ECF Doc. No. 28].

On February 11, 2013, Altitude Express and Mr. Maynard moved for summary judgment, seeking the dismissal of each of Mr. Zarda's then-pending claims [ECF Doc. Nos. 109-111]. On April 8, 2013, Mr. Zarda filed his opposition to the dispositive motion [ECF Doc. Nos. 126-128]. On April 9, 2013, Mr. Zarda also moved for summary judgment on the issues of liability under his claims for sexual orientation discrimination and minimum wage violations [ECF Doc. Nos. 132].

On March 28, 2014, this Court (Bianco, J.) determined there existed a genuine dispute of material fact regarding the reasons for Mr. Zarda's termination and concluded that Mr. Zarda was entitled to a trial with respect to only his state-law cause of action. [ECF Doc. Nos. 145, 150]. However, Mr. Zarda's Title VII claim was properly dismissed because he failed to establish a *prima facie* case of gender stereotyping discrimination under Title VII. *See* [ECF Doc. No. 150, at 4:1-24].

On March 28, 2014, Mr. Zarda filed his Second Amended Complaint pursuant to the Court's March 28, 2014 Order [ECF Doc. No. 146]. This pleading alleged four (4) causes of action against Altitude Express and Mr. Maynard: (1) unlawful discrimination based on nonconforming gender stereotypes in violation of Title VII; (2) unlawful discrimination premised on sexual orientation in violation of the NYSHRL; (3) unlawful discrimination based on nonconforming gender stereotypes in violation of the NYSHRL; and (4) minimum wage violations in violation of the NYLL [ECF Doc. No. 146]. *See also* Zabell Decl. at Exhibit "A".

On October 6, 2014, a Suggestion of Death was filed concerning Mr. Zarda [ECF Doc. No. 173]. On October 7, 2014, Mr. Zarda's counsel confirmed Mr. Zarda's death as the result of a

base-jumping accident in Switzerland [ECF Doc. No. 174]. On December 3, 2014, the current Plaintiffs were substituted in place of Mr. Zarda [ECF Doc. No. 180].

Between October 13 and 21, 2015, all facts forming the basis of Mr. Zarda's sexual orientation claim against Altitude Express and Mr. Maynard were tried before a jury of his peers within the context of the NYSHRL [ECF Doc. Nos. 231-32, 236-38, 243]. Upon the completion of a fair and proper trial, on October 26, 2015, a jury found Mr. Zarda failed to prove, by a preponderance of the evidence, that his sexual orientation was a factor in the termination of his employment at Altitude Express [ECF Doc. No. 246]. *See also* Zabell Decl. at Exhibit "B". On October 28, 2015, Judgement was entered, with Plaintiffs taking nothing of Altitude Express or Mr. Maynard, and the action dismissed on the merits [ECF Doc. No. 247]. *See also* Zabell Decl. at Exhibit "C".

On November 20, 2015, Plaintiffs appealed from the Judgment [ECF Doc. No. 252].

**B. The Appellate Proceedings**

On April 18, 2017, a unanimous panel of the Second Circuit affirmed, *inter alia*, the District Court's holding in regard to Zarda's Title VII claim. *See Zarda v. Altitude Express*, 855 F.3d 76, 79 (2d Cir. 2017). Importantly, the *per curium* panel noted that Plaintiffs failed to establish the requisite proximity between Mr. Zarda's termination and his failure to conform to gender stereotypes. This determination was not challenged on appeal. The panel also found that Plaintiffs could receive a new trial only if Title VII's prohibition on sex discrimination encompassed discrimination based on sexual orientation – a result foreclosed at the time by *Simonton v. Runyon*, 232 F.3d 33, 34 (2d Cir. 2000) and its progeny. *Zarda*, 855 F.3d at 82.

On May 2, 2017, Plaintiffs petitioned the Second Circuit for a rehearing *en banc*, which was granted by a majority of the active judges of the Circuit Court. *See Zarda v. Altitude Express*,

*Inc.*, 883 F.3d 100, 107 (2d Cir. 2018). On February 26, 2018, the *en banc* decision of the Second Circuit vacated the District Court's judgment on Plaintiffs' Title VII claim, remanded the case for further proceedings, and otherwise affirming the judgment in all other respects. *Id.* at 107.

On May 14, 2018, Plaintiffs' were awarded appellate costs in the amount of $3,693.80. *See* Zabell Decl. at Exhibit "D".

On May 29, 2018, Altitude Express filed a petition for writ of certiorari before the U.S. Supreme Court, which was granted on April 22, 2019. *See Altitude Express, Inc. v. Zarda*, 139 S. Ct. 1599 (2019). The case was consolidated with *R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC*, 139 S. Ct. 1599 (2019) and *Bostock v. Clayton County*, 139 S. Ct. 1599 (2019). The cases were argued before the Court on October 8, 2019 and decided on June 15, 2020. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020). Pertinent here, the Court affirmed the Second Circuit's February 26, 2018 decision.

On August 6, 2020, Plaintiffs (as Respondents) were awarded costs for printing of the record in the amount of $2,530.50. *See* Zabell Decl. at Exhibit "E".

**C. The Instant Proceedings**

On December 28, 2020, Plaintiffs filed their instant Second Amended Complaint [ECF Doc. No. 280]. This pleading alleges four (4) causes of action against *only* Mr. Maynard in his individual capacity and as the alleged "predecessor in interest", the sole shareholder, and alter ego of Altitude Express: (1) unlawful discrimination premised on sex in violation of Title VII; (2) collection of costs awarded to Plaintiffs'; (3) alter ego liability pursuant to New York's Business Corporation Law ("BCL") § 1006(b); and (4) the alleged fraudulent or voidable transfer pursuant to the New York Voidable Transfer Act [ECF Doc. No. 280]. *See* Zabell Decl. at Exhibit "F".

### III.   STANDARD OF REVIEW

The standard of review on a motion made pursuant to Fed. R. Civ. P. 12(b)(6) is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 199-201 (E.D.N.Y. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 679 (2009)) (brackets in original)). "Determining whether a complaint states a plausible claim for relief will[] … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff when deciding a motion pursuant to Fed. R. Civ. P. 12(b)(6). *See Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018); *Elias v. Rolling Stone L.L.C.*, 872 F.3d 97, 104 (2d Cir. 2017). However, "[t]hreadbare recitals of the elements of

6

a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009)). Moreover, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018) (quoting *Arista Records L.L.C. v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)).

Fundamentally, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

Here, Plaintiffs present no cognizable legal theory sufficient to survive the instant motion. The only federal claim Plaintiffs allege is grounded in Title VII. This claim, however, is fatally flawed. As is discussed, *infra*, that statue provides no individual liability.

Further, the Second Circuit instructs that "absent exceptional circumstances," where federal claims can be disposed of pursuant to Fed. R. Civ. P. 12(b)(6) or summary judgment grounds, courts should "abstain from exercising pendent jurisdiction." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159 (1986); *see also Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) (where federal claims are eliminated in the early stages of litigation courts should generally decline to exercise supplemental jurisdiction

7

over remaining state claims) (citing *Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006)).

Since Plaintiffs cannot support their federal claim seeking to impose liability upon Mr. Maynard – individually or otherwise – we respectfully submit that this Court should also decline to exercise jurisdiction over Plaintiffs' claims based on New York State law. Should the Court see fit, however, to entertain Plaintiffs' state law claims, these causes of action, too, should be dismissed for the reasons addressed below.

## IV.    ARGUMENT

### A. Plaintiffs' First Cause of Action arising under Title VII Should be Dismissed

As a threshold matter, Plaintiffs' claims of unlawful discrimination premised on Mr. Zarda's sexual orientation were already tried before a jury in the NYSHRL context. By a preponderance of the evidence, the jury found that Mr. Zarda's sexual orientation was not a factor in the termination of his employment at Altitude Express [ECF Doc. No. 246]. *See* Zabell Decl. at Exhibit "B". There exists no new evidence as concerns this claim. The record here is the same as the record from trial.

Claims brought under Title VII and the NYSHRL are analyzed and adjudged using the same standard. *See McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015) (applying the same standard for analyzing discrimination claims under both Title VII and the NYSHRL); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) ("[w]e have observed that 'claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII") (quoting *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997)).

Again, these matters have already been fully briefed and decided upon in competing motions for summary judgment (*see* [ECF Doc. Nos. 109-111; 126-128; 132; 145; 150]), and tried before a jury, the verdict for which dismissed, on the merits, Plaintiffs' claims of unlawful discrimination against Mr. Maynard. [ECF Doc. No. 247]. *See also* Zabell Decl. at Exhibit "C". Since a jury has already found Mr. Maynard free from liability with respect to Mr. Zarda's NYSHRL claims of unlawful discrimination premised on his sexual orientation, Plaintiffs' instant claims based on identical evidence are thus both factually and legally insufficient to hold Mr. Maynard liable for the same under Title VII.

Indeed, Mr. Zarda's Second Amended Complaint (*see* Zabell Decl. at Exhibit "A") and Plaintiffs' instant Second Amended Complaint (*see id.* at Exhibit "F") are factually indistinguishable as concerns the claims of unlawful discrimination premised on gender or sexual orientation. For example, in each, Mr. Zarda is alleged to have been an openly gay man under the employ of Altitude Express and Mr. Maynard as a "Tandem and Accelerated Freefall Instructor." *Compare* [ECF Doc. No. 146, at ¶¶ 9, 25] *with* [ECF Doc. No. 280, at ¶¶ 34, 45, 48]. *See also* Zabell Decl. Exhibit "A", at ¶¶ 9, 25; Zabell Decl. Exhibit "F" at ¶¶ 34, 45, 48. Each opines of the "intimate experience" of a tandem skydive and the jokes supplied by instructors to clients to ease the tensions of the experience. *Compare* [ECF Doc. No. 146, at ¶¶ 17-22] *with* [ECF Doc. No. 280, at ¶¶ 38-44]. *See also* Zabell Decl. Exhibit "A", at ¶¶ 17-22; Zabell Decl. Exhibit "F" at ¶¶ 38-44. Each allege that a comment to a client concerning his sexual orientation was the factor or the motivating factor leading to the termination of Mr. Zarda's employment with Altitude Express. *Compare* [ECF Doc. No. 146, at ¶ 32] *with* [ECF Doc. No. 280, at ¶ 55]; *see also* Zabell Decl. Exhibit "A", at ¶ 32; Zabell Decl. Exhibit "F" at ¶ 55. Each also allege Mr. Maynard failed to properly investigate the customer complaint by seeking Mr. Zarda's version of events. *Compare*

9

[ECF Doc. No. 146, at ¶¶ 42, 44-45] *with* [ECF Doc. No. 280, at ¶¶ 64, 66-67]; *see also* Zabell Decl. Exhibit "A", at ¶¶ 42, 44-45; Zabell Decl. Exhibit "F" at ¶¶ 64, 66-67. Each also allege that Mr. Maynard used the customer complaint as a "pretext" for terminating Mr. Zarda. *Compare* [ECF Doc. No. 146, at ¶¶ 46, 50] *with* [ECF Doc. No. 280, at ¶¶ 64, 66, 72]; *see also* Zabell Decl. Exhibit "A", at ¶¶ 46, 50; Zabell Decl. Exhibit "F" at ¶¶ 64, 66, 72. Each also allege Mr. Maynard was "hostile to any expression of sexual orientation that did not conform to sex stereotypes." [ECF Doc. No. 146, at ¶¶ 26-31] *with* [ECF Doc. No. 280, at ¶¶ 49-54]; *see also* Zabell Decl. Exhibit "A", at ¶¶ ¶¶ 26-31; Zabell Decl. Exhibit "F" at ¶¶ 49-54.[1]

Plaintiffs cannot now, using the same allegations against the same established record, set forth factual content sufficient to allow this Court to draw a reasonable inference that Mr. Maynard is liable under Title VII when identical standards are applied to both the federal and state discrimination statutes and Plaintiffs' claims of unlawful discrimination already dismissed on their merits. *See McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015). We therefore respectfully submit Plaintiffs' pending Title VII claim should be dismissed on these grounds alone.

Notwithstanding the above, Plaintiffs cannot establish individual or alter ego liability against Mr. Maynard on Title VII grounds. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317-19 (2d Cir. 1995) (holding "an employer's agent may not be held individually liable under Title VII" and that "[c]ourts which have held that there can be no individual liability under Title VII have

---

[1] Notably, the Court's March 28, 2014 Order (Bianco, J.) addressing the parties' respective motions for summary judgment dismissed Mr. Zarda's claim based upon unlawful gender stereotyping in violation of Title VII, holding in pertinent part:

> Having reviewed the evidence under the applicable standard I'm granting the motion for summary judgment on that claim because I find that the plaintiff has failed to meet even the *prima facie* burden, as minimal as it is, that the adverse action gave rise to an inference of discrimination based up gender stereotyping.

[ECF Doc. No. 150, at pp. 4-5].

uniformly failed to identify any rare and exceptional circumstances or other indicia making 'plain the intent of Congress that the letter of the statute is not to prevail"), *abrogated on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *Mandell v. Cnty. of Suffolk & John Gallagher*, 316 F.3d 368, 377 (2d Cir. 2003) ("under Title VII individual supervisors are not subject to liability"); *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (affirming dismissal because "individuals are not subject to liability under Title VII") (citations omitted); *Tolbert v. Smith*, 790 F.3d 427, 434 n.3 (2d Cir. 2015) (Title VII does not allow for individual liability) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (*per curiam*).

The lack of individual liability under Title VII applies with equal force to Plaintiffs' theory of alter ego liability.[2] Indeed, identical arguments in favor of alter ego liability have been squarely rejected by Courts within the Title VII context. *See Dearth v. Collins*, 441 F.3d 931, 933-34 (11th Cir. 2006) (finding, after discussing the statute, that the alter ego doctrine does not create an exception to the rule against individual employee liability in Title VII cases); *Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir. 2001) (noting that Congress's intent in drafting Title VII would tend to negate alter ego liability for individuals); *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 200 (D. Conn. 2000) (noting that district courts are increasingly disallowing official capacity claims against supervisors because [Tomka] and Title VII's language compel a holding that only employer-entities are liable under Title VII); *Lafferty v. Owens, Schine & Nicola, P.C.*, No. 3:09cv1045 (MRK), 2012 U.S. Dist. LEXIS 5276, at *32 (D. Conn. Jan. 18, 2012) ("[e]mploying the alter ego doctrine to accomplish the same result would undermine the purpose of the doctrine and constitute an end run around the Tomka decision").

---

[2] Although not expressly pled, we assume for purposes of the instant motion that Plaintiffs assert claims premised in Title VII against Mr. Maynard in his individual capacity and as the alter ego of Altitude Express.

Plaintiffs present no factual or legal theory sufficient to survive this Court's Fed. R. Civ. P. 12(b)(6) analysis. Mr. Zarda's claims arising from unlawful discrimination based upon gender and sexual orientation discrimination have, within the context of the NYSHRL, already been decided in Mr. Maynard's favor. The **identical** record cannot now lead to Plaintiffs' relief on Title VII grounds. Indeed, Title VII does not allow for Mr. Maynard to be held liable individually or as the alter ego of Altitude Express.

Accordingly, we respectfully submit this Court should dismiss Plaintiffs' First Cause of Action in its entirety and with prejudice. We further submit that since Plaintiffs' sole federal claim is factually and legally deficient, the Court should refrain from exercising pendent jurisdiction over their remaining claims.

## B. Plaintiffs' Second Cause of Action Should be Dismissed

On October 26, 2015, a jury found Mr. Zarda's failed to prove, by a preponderance of the evidence, that his sexual orientation was a factor in the termination of his employment at Altitude Express [ECF Doc. No. 246]. *See also* Zabell Decl. at Exhibit "B". On October 28, 2015, Judgement was entered, with Plaintiffs taking nothing of Altitude Express or Mr. Maynard, and the action dismissed on the merits [ECF Doc. No. 247]. *See also* Zabell Decl. at Exhibit "C". Accordingly, Mr. Maynard was absolved of liability. This outcome was not altered by virtue the rulings made by first the Second Circuit (*see Zarda*, 883 F.3d 100) or the U.S. Supreme Court (*see Bostock*, 140 S. Ct. at 1734). Although these decisions overturned longstanding precedent concerning Title VII's inclusion of sexual orientation within that statute's definition of "sex", they did not reverse the jury's verdict concerning Mr. Maynard. Put differently, Mr. Maynard's involvement in this matter ended when: (1) a jury concluded, after considering testimony that a female patron was subjected to sexually abusive behavior from Mr. Zarda, that Mr. Zarda was

terminated for reasons other than workplace discrimination [ECF Doc. No. 246]; and (2) judgment was entered in Mr. Maynard's favor [ECF Doc. No. 247]. *See* Zabell Decl. at Exhibits "B" and "C".

However, using their "predecessor in interest" theory, Plaintiffs now seek to hold Mr. Maynard personally responsible for the costs associated with the appeals of this matter. First, as set forth in Section "IV.C", *supra*, Plaintiffs'' "predecessor in interest" theory is legally insufficient to hold Mr. Maynard responsible for the debts and liabilities of the corporate entity Altitude Express.

Second, it was Plaintiffs who appealed to the Second Circuit and Altitude Express who petitioned the U.S. Supreme Court. The mere fact that Mr. Maynard's name remained in the caption as a procedural formality is not, standing alone, a proper basis for claiming liability for the collection of costs. Indeed, Fed. R. App. P. 12(a) requires the Circuit Clerk, "[u]pon receiving the copy of the notice of appeal and the docket entries from the district clerk under Rule 3(d) ... must docket the appeal **under the title of the district-court action** and must identify the appellant, adding the appellant's name if necessary." Fed. R. App. P. 12 (emphasis added). Similarly, Sup. Ct. R. 14(1)(b)(i) mandates that a writ of certiorari contain "[a] list of all parties to the proceeding in the court whose judgment is sought to be reviewed (unless the caption of the case contains the names of all the parties)."

Despite Plaintiffs' allegations, Mr. Maynard is not liable for the collection of costs "personally and as predecessor-interest" to Altitude Express [ECF Doc. No. 280, at ¶ 80]. *See also* Zabell Decl. Exhibit "F", at ¶ 80. Accordingly, we respectfully submit that Plaintiffs' Second Cause of Action be dismissed, in its entirety and with prejudice, inclusive of its attempt to recover "double costs" and undefined sanctions.

13

**C. Plaintiffs'' Third Cause of Action arising under New York's Business Corporation Law § 1006 Should be Dismissed**

Citing to New York's Business Corporation Law ("BCL") § 1006, Plaintiffs Third Cause of Action seeks to hold Mr. Maynard liable as the alter ego of Altitude Express [ECF Doc. No. 280, at ¶¶ 82-92]. *See* Zabell Decl. Exhibit "F" at ¶¶ 82-92]. BCL § 1006, entitled "[c]orporate action and survival of remedies after dissolution," provides:

> (a) A dissolved corporation, its directors, officers and shareholders may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place, except as otherwise provided in this chapter or by court order. In particular, and without limiting the generality of the foregoing:
>
> > (1) The directors of a dissolved corporation shall not be deemed to be trustees of its assets; title to such assets shall not vest in them, but shall remain in the corporation until transferred by it in its corporate name.
> >
> > (2) Dissolution shall not change quorum or voting requirements for the board or shareholders, or provisions regarding election, appointment, resignation or removal of, or filling vacancies among, directors or officers, or provisions regarding amendment or repeal of by-laws or adoption of new by-laws.
> >
> > (3) Shares may be transferred and determinations of shareholders for any purpose may be made without closing the record of shareholders until such time, if any, as such record may be closed, and either the board or the shareholders may close it.
> >
> > (4) The corporation may sue or be sued in all courts and participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise, in its corporate name, and process may be served by or upon it.
>
> (b) The dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution, except as provided in sections 1007 (Notice to creditors; filing or barring claims) or 1008

14

(Jurisdiction of supreme court to supervise dissolution and liquidation).

N.Y. Bus. Corp. Law § 1006. This statute governs the procedure for non-judicial dissolution of a corporation. It does not, contrary to Plaintiffs' position, provide any independent or additional rights or remedies to creditors of a dissolved corporation. BCL § 1006 states only that dissolution of a corporation does not affect a creditor's rights or claims existing before such dissolution. Thus, to the extent that Plaintiffs' Third Cause of Action relies upon BCL § 1006, it should be dismissed as legally insufficient.

The content of Plaintiffs' pleadings, however, specifically request the Court "pierce the corporate veil" and hold Mr. Maynard liable as the "predecessor in interest for the former Altitude Express…." [ECF Doc. No. 280, at ¶¶ 83, 91]. *See also* Zabell Decl. Exhibit "F" at ¶¶ 83, 91.

First, Plaintiffs present no cognizable legal theory in support of their request for "predecessor in interest" liability. Mr. Maynard is not the "predecessor in interest" to Altitude Express. With this language, Plaintiffs attempt to redefine the definition of, and the standard for adjudging, "successor liability." Indeed, silent within each of the cases cited by Plaintiffs within the Second Amended Complaint are the factual underpinnings which Plaintiffs now attempt to force within the current circumstances. That is, the cases used in support by Plaintiffs – *Battino v. Cornelia Fifth Ave., L.L.C.*, 861 F. Supp. 2d 392 (S.D.N.Y. 2012); *Xue Ming Wang v. Abumi Sushi, Inc.*, 262 F. Supp. 3d 81 (S.D.N.Y. 2017) – do not concern a finding of successor liability as respects a selling party. This is precisely what Plaintiffs now attempt. The "predecessor in interest" theory which Plaintiffs argue is nonexistent. And for good reason: what Plaintiffs attempt to set forth, unsuccessfully, is a theory of traditional liability.

As set forth *infra*, Plaintiffs did not appeal the March 28, 2014 dismissal of Mr. Zarda's Title VII gender stereotyping claim. *See Zarda*, 855 F.3d at 82. Moreover, although the Second

Circuit's February 26, 2018 *en banc* decision vacated the District Court's judgment on Plaintiffs' Title VII claim, it affirmed the judgment in all other respects., inclusive of Plaintiffs' NYSHRL claims. *See Zarda*, 883 F.3d at 132. Put differently, even if, *arguendo*, "predecessor in interest" liability was cognizable, there is still no liability on the part of Altitude Express that that Mr. Maynard could be deemed to assume as the role of "predecessor."

Second, Plaintiffs fail to adequately plead facts to support their request to "pierce the corporate veil" and hold Mr. Maynard as the alter ego of Altitude Express. The New York Court of Appeals has described the doctrine of piercing the corporate veil as follows:

> The doctrine ... is typically employed by a [claimant] seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation [citations omitted]. The concept is equitable in nature and assumes the corporation itself is liable for the obligation sough to be imposed [citation omitted]. Thus, an attempt of a [claimant] to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners [citation omitted].

*EED Holdings v. Palmer Johnson Acq. Corp.*, 387 F. Supp. 2d 265, 273-74 (S.D.N.Y. 2004) (brackets orginial) (quoting *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140-41 (1993)).

"Generally, 'piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) **that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury**.'" *Careccia v. MacRae*, No. 05-CV-1628 (ARR), 2005 U.S. Dist. LEXIS 48970, at *6 (E.D.N.Y. July 15, 2005) (quoting *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993) (emphasis added)). The New York Court of Appeals has held that both of these elements must be established in order to justify application of the veil-piercing doctrine. *See TNS*

16

*Holdings Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998) ("[e]vidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance") (citing *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140-41 (1993)). "This standard is 'very demanding' such that piercing the corporate veil 'is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Graham v. HSBC Mtge. Corp.*, No. 18-CV-4196 (KMK), 2020 U.S. Dist. LEXIS 174435, at *22 (S.D.N.Y. Sep. 23, 2020) (citing *Capmark Fin. Grp. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013)) (citation and quotation marks omitted); *see also EED Holdings*, 387 F. Supp. 2d at 274 ("it is well established that purely conclusory allegations cannot suffice to state a claim based on veil-piercing ...") (citations and quotation marks omitted). Consequently, "courts routinely dismiss alter ego claims pursuant to Fed. R. Civ. P. 12(b)(6)." *Hamlen v. Gateway Energy Servs. Corp.*, 2017 U.S. Dist. LEXIS 205799, at *25 (S.D.N.Y Dec. 8, 2017) (quoting *Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09-CV-3729 (HBP), 2010 U.S. Dist. LEXIS 84830, 2010 WL 3291582, at *10 (S.D.N.Y. Aug. 17, 2010)); *see also De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (dismissing alter ego claim where complaint was "devoid of any specific facts or circumstances supporting" plaintiff's conclusory allegations); *Two Kids from Queens, Inc. v. J&S Kidswear, Inc.*, No. 09-3690 (DRH) (AKT), 2010 U.S. Dist. LEXIS 10620, 2010 WL 475319, at *10 (E.D.N.Y. Feb. 8, 2010) (dismissing alter ego claim on the grounds that the "complaint fails to set forth facts, as opposed to legal conclusions to support its assertion of alter ego liability").

Plaintiffs offer no allegations to meet the above standard. Instead, as outlined below, Plaintiffs merely interpose conclusory allegations relevant to their veil-piercing request:

- "Between 2015 to approximately March 2017 (when it dissolved), Maynard worked for had been [*sic*] planning to sell Altitude Express. Indeed, Skydive

17

Long Island, Inc. ["S.D.L.I."], was incorporated in 2016, well before he dissolved Altitude Express. Since Altitude Express used the dba moniker 'Skydive Long Island,' there was a continuity of using the goodwill that the S.D.L.I. enjoyed, and the new and the old S.D.L.I. used it at the same time." Zabell Decl. Exhibit "F", at ¶ 3;

- "These intentions were never made known to the Plaintiff, who found out by happenstance. Indeed, Maynard could well have turned over the rights reigns [*sic*] to the New Skydive Long Island and was just waiting as long as he could until the lawsuit was over." *Id.* at ¶ 4;

- "Defendant Ray Maynard was the Chief Executive Officer of Skydive Long Island and its sole shareholder, as outlined in its corporate documents." *Id.* at ¶ 14;

- "Maynard sold the goodwill and name (and perhaps more) to an entity known as Sky Dive Long Island, Inc., which – although S.D.L.I. was the name Altitude Express did business as – incorporated before Altitude Express dissolved." *Id.* at ¶ 15;

- "In the contract of sale – as reported to plaintiffs after an in-camera review – S.D.L.I., Inc. bought the entity but disclaimed liability for any pending civil litigation on account of Altitude Express." *Id.* at ¶ 16;

- "Maynard, who sold and benefitted from the sale, is the only possible defendant in interest (or more appropriately, predecessor in interest) to the original defendant. The law does not allow an employer to divest itself from liability by selling a business, profiting from the exchange, receiving some consideration – and leaving a civil-rights plaintiff without a remedy." *Id.* at ¶ 17;

- "However, although there was a continuity of operations between the former Altitude Express and S.D.L.I., the sole predecessor in interest is Raymond Maynard. He can pay his former corporation's debts as the sole shareholder of a defunct corporation which he dissolved." *Id.* at ¶ 19;

- Here it is almost certain to these plaintiffs that S.D.L.I. knew about this lawsuit, and that is why it expressly disclaimed liability for it in the sales contract. *Id.* at ¶ 22;

- "Furthermore, under New York law, an aggrieved party can still seek to impose liability on an individual associated with the successor entity under a corporate veil-piercing theory, whereby plaintiffs must establish: (i) that the owner exercised complete domination over the corporation for the transaction at issue; and (ii) that Maynard used this power to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *Id.* at ¶ 25;

18

- "Such fraud need not be actual; it may be constructive." *Id.* at ¶ 26;

- "Maynard planned this sale to time with the lawsuit and delayed the deal for that purpose. The case proceeded before the appeal, and Maynard and his and the [*sic*] counsel appeared in court as if there had been no corporate machinations behind the scenes." *Id.* at ¶ 27;

- "Maynard planned the sale before the trial on the state law claim in 2015. At or about that time, Maynard and his wife appeared on numerous local T.V. spots bidding 'farewell' to the community." *Id.* at ¶ 28;

- "Maynard, the sole decision-maker for the defunct Altitude Express, agreed to S.D.L.I.'s terms in signing the sale agreement." *Id.* at ¶ 29;

- "If S.D.L.I., Inc. is not the liable successor in interest, then liability logically devolves to Raymond Maynard as a matter of law." *Id.* at ¶ 30;

- "Maynard planned the sale during the litigation. He knew what he was doing and intended to disclaim liability by dissolving the corporation." *Id.* at ¶ 31;

- "Here, as alleged above, Raymond Maynard was the sole shareholder and C.E.O. of Altitude Express." *Id.* at ¶ 86;

- "There were no other corporate officers, and other niceties of the corporate form were not always followed upon information and belief." *Id.* at ¶ 87;

- "Significantly, before the new S.D.L.I. acquired Altitude Express, both of them were using the moniker 'Skydive Long Island' at the same time – one as an official corporate name and the other as the name Altitude Express did business as." *Id.* at ¶ 88;

- "Maynard alone had the power to allow a prospective purchaser (or anyone) to use his corporation's dba, which shows a manifest disregard for the corporate form." *Id.* at ¶ 89;

- "As the former sole shareholder of Altitude Express, Maynard has sufficient assets to pay for this litigation, and the liability should not be imposed upon S.D.L.I., Inc. as a knee-jerk reaction as a matter of fundamental fairness." *Id.* at ¶ 90; and

- "Under New York law, Maynard (1) exercised complete domination of the corporation concerning the pre-sale and sale; and (2) his power was used to commit a fraud or wrong against the plaintiffs – to confuse the issue of liability, to attempt to extinguish it on grounds other than the merits. It also prejudices Plaintiffs insofar as collecting the modest costs awarded in their favor." *Id.* at ¶ 91.

Even assuming, *arguendo*, that Plaintiffs sufficiently allege Mr. Maynard's level of control as the sole shareholder of Altitude Express – which they do not, since their substantive allegations in this respect are made upon information and belief (*see* Zabell Decl. Exhibit "F". at ¶ 87) – they still fail to offer additional factual background sufficient to meet the second prong of the analysis: that Mr. Maynard used his control "to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" We respectfully submit that the timing of the underlying proceedings and the sale of Altitude Express defeat any finding necessary to pierce the proverbial veil.

On October 26, 2015, a jury found that Plaintiffs failed to prove that Mr. Zarda's sexual orientation was a factor in the termination of his employment at Altitude Express [ECF Doc. No. 246]. *See also* Zabell Decl. at Exhibit "B". On October 28, 2015, Judgement was entered further memorializing this verdict, with Plaintiffs taking nothing of Altitude Express or Mr. Maynard, and the action was dismissed on the merits [ECF Doc. No. 247]. *See* Zabell Decl. at Exhibit "C".

On April 20, 2016, nearly six (6) months after being cleared of Plaintiffs' civil charges, Mr. Maynard entered into the Purchase and Sale Agreement of Altitude Express.[3] And, on April 18, 2017, a unanimous panel of the Second Circuit affirmed, *inter alia*, the District Court's holding in regard to Zarda's Title VII claim. *See Zarda v. Altitude Express*, 855 F.3d 76, 79 (2d Cir. 2017). Put differently, the sale was affected only after a jury returned a verdict in favor of Altitude Express and Mr. Maynard and approximately one (1) year before the Second Circuit affirmed that outcome. No fraud was perpetrated upon Plaintiffs in connection with this transaction, nor did they suffer any injury as a result of the sale. Indeed, the required "fraud or injustice" may not be established merely because the alleged corporation may now be judgment proof. *See Secured Sys. Tech. v. Frank Lill & Son, Inc., No*. 08-CV-6256, 2012 U.S. Dist. LEXIS 141845, at *14 (W.D.N.Y. Oct.

---

[3] Copies of the referenced Purchase and Sale Agreement were submitted to Your Honor under seal for an *in camera* inspection on November 13, 2020.

1, 2012) (citation omitted); *see also Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) ("Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil").

Accordingly, Plaintiffs have failed to adequately allege facts sufficient to disregard the corporate entity and hold Mr. Maynard liable in place of Altitude Express. Plaintiffs' Third Cause of Action should be dismissed, in its entirety, and with prejudice.

## D. Plaintiffs' Fourth Cause of Action Should be Dismissed

Sections 270(c) through (f) of New York's Uniform Voidable Transactions Act provides the following relevant definitions:

> (c) "Claim" … means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.
>
> (d) "Creditor" means a person that has a claim.
>
> (e) "Debt" means liability on a claim.
>
> (f) "Debtor" means a person that is liable on a claim.

2019 N.Y. ALS 580, 2019 N.Y. Laws 580, 2019 N.Y. Ch. 580, 2019 N.Y. AB 562.

Under the construction of this statute, Plaintiffs are not a "creditor". They were in no manner whatsoever parties to the Purchase and Sale Agreement between the former Altitude Express and Mr. Maynard and its successor. Plaintiffs do not have standing to assert a claim to void the sale, a fact Plaintiffs allude to within the pleadings. *See* Zabell Decl. Exhibit "F", at ¶ 96 ("[u]nder New York Law, a transfer made by a debtor (here Maynard, who is an actual debtor and a putative debtor" is voidable as to a creditor (here S.D.L.I., Inc.) …"). Moreover, Plaintiffs merely insert the statutory language while attempting, through rank speculation and "upon information and belief", to shoehorn themselves into a claim to recover on the sale of Altitude Express. Put

differently, Plaintiffs fail to plead sufficient facts "to state a claim for relief that is plausible on its face." *Wolo Mfg. Corp.*, 349 F. Supp. 3d at 199-201 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In any event, the statute of limitations for a claim under the New York's Uniform Voidable Transactions Act in four (4) years. *See* 2019 N.Y. ALS 580, 2019 N.Y. Laws 580, 2019 N.Y. Ch. 580, 2019 N.Y. AB 5622. The sale of Altitude Express was effectuated on April 20, 2016, and the subject Second Amended Complaint filed on December 28, 2020. Even if Plaintiffs pled a cognizable cause of action, they did so beyond the expiration of the application limitations period.

Accordingly, we respectfully submit that Plaintiffs' Fourth Cause of Action should be dismissed, in its entirety, and with prejudice.

## V.    CONCLUSION

Absent legitimate ground by which to advance their claims, it would appear Plaintiffs' counsel seeks to capitalize upon the perceived momentum of the 2020 U.S. Supreme Court decision as a means by which to legitimize his arguments. However, the Court's holding in *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) has no true impact on Plaintiffs' pending claims.

Plaintiffs have failed, in any meaningful sense, to submit valid claims sufficient to garner the relief they request. For the foregoing reasons, we respectfully submit that Plaintiffs' subject Second Amended Complaint should be dismissed, it its entirety and with prejudice, together with such other relief as the Court deems just, proper, and equitable.

Dated: January 29, 2021
     Bohemia, New York

Respectfully Submitted,

ZABELL & COLLOTTA, P.C.
*Attorneys for Defendant*
*Raymond Maynard*

By: _____
    Saul D. Zabell, Esq.
    Ryan T. Biesenbach, Esq.
    One Corporate Drive, Suite 103
    Bohemia, New York 11716
    T: (631) 589-7242
    F: (631) 563-7475
    SZabell@laborlawsny.com
    RBiesenabch@laborlawsny.com