UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

MELISSA ZARDA, et al.,

        Plaintiffs,

        -against-

RAYMOND MAYNARD, as predecessor
in interest, sole shareholder and alter ego
of ALTITUDE EXPRESS, INC.,
and RAYMOND MAYNARD, individually,

        Defendants.
---------------------------------------------------------------X

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

10-4334-CV (SJF) (AYS)

## PRELIMINARY STATEMENT

Defendant replots, in an attentive, thorough manner, ten years of procedural history. However, the layers of these years are mostly immaterial and should not cast a distracting shadow on the legal disputes important now. There is a live Title VII matter before the Court; otherwise, the Supreme Court would not have remanded the case. Raymond Maynard might not be liable for that claim *as a natural person,* but he maintains the only extant connection to the dissolved corporation, Altitude Express. He has potential liability that a court must examine after allowing plaintiffs proper discovery. Maynard himself explained his potential liability to the Supreme Court in successfully obtaining the grant of the writ. *See* portions of the writ petition reply recounted below. (*See* pp. 5-7 of the Reply Brief in Support of Certiorari, attached as Exhibit A.) He has forgotten those statements, but they are on paper.

To ask the Court to decide this dispute on the papers when plaintiffs have not had discovery would be a denial of due process. Plaintiffs sought information about the corporate sale in 2018. Then the defendants took them to the Supreme Court – which vindicated plaintiffs' cause. Are the winners of a landmark decision to be told on remand that they are just out of luck and get no discovery? This cannot be true, and the law is nuanced sufficiently to

1

deny this motion. Plaintiffs know the broad outlines of the corporate sale but have not seen the sales contract. Mr. Maynard – who reaped the benefits of his corporation's sale – has not suggested he is indigent. As such, the question of Title VII liability to a predecessor corporation does not cancel the allegations in a complaint that survived all the way to the Supreme Court.[1] To dismiss would not only be contrary to the law of the case but would promote the idea that a corporation may quietly dissolve and absolve itself of liability for discrimination under Title VII. Do not be fooled by the defendant's repeated invocation of the jury verdict under the state law. Judge Bianco dismissed Zarda's Title VII claim and instructed only under the more onerous New York State Human Rights Law (NYSHRL). The state cause of action does not contain the same protections as Title VII. Plaintiffs were taken to the Supreme Court and vindicated them.

Maynard tries to escape from Title VII by ignoring that the federal and state statutes have different burdens of proof and remedies; the Supreme Court decision in this very case explains as much. Practically, why would the High Court find for Mr. Zarda if liability would just go up in smoke – *poof* – upon remand? We always suspected the sale contract would contain a disclaimer for the purchasing entity, but that is not the end of the inquiry. Maynard is seeking to escape liability by the mere fact that he sold his corporation. Usually, this lends itself to an inquiry into "successor liability," but it does not rule predecessor liability or some other form of piercing the corporate veil to vindicate anti-discrimination laws. As the Seventh Circuit found, reassessing corporate liability after a sale "helps make victims of discrimination whole under Title VII by combatting . . . changes in business" form. *EEOC v. N. Star Hosp.,*

---

[1] Maynard's individual liability – as opposed to residual corporate liability – extends only to the costs he refuses to pay on appeal. Plaintiff cross moved for payment of those costs, and I incorporate my papers in support of that motion, in opposition to Maynard's motion that he is not liable for the costs he elected to incur.

2

*Inc.*, 777 F.3d 898, 903 (7th Cir. 2015). Maynard sold his corporation without any notice to potential creditors; he then took this case to the U.S. Supreme Court.

The defense knew that losing at the Supreme Court was possible; otherwise, it would not have altered the justices to many the unresolved issues concerning Maynard's liability. *See* Exhibit A at 5-6 (set forth below). Maynard did that to obtain the grant of the writ. Now he returns with unclean hands, taking inconsistent positions than at the Supreme Court. This is wrong and grounds for estoppel. The defense got what it asked for: the high court granted certiorari. Much was at stake for the civil rights of LGBT+ individuals nationwide and Maynard went ahead. But plaintiffs won and Maynard's statements to the Supreme Court preclude the grant of this motion. He is seeking a reward for gamesmanship when this court must give the remand full effect. That means: (1) to enforce payment of appellate costs, a topic addressed in a cross-motion; (2) to allow plaintiffs' discovery into the questions of the corporate dissolution and Maynard's liability; and (3) to apply liability to Maynard as a predecessor in interest if the evidence so shows. We need discovery on that question, and to ask for it is reasonable. Discrimination matters that go to the United States Supreme Court and change national law do not get remanded to be swept under the rug by ambiguous corporate sleight of hand.

**I.      The Defense Attacks the Viability of Title VII by Conflating that Law with the NYSHRL. The Laws Are Distinct. Both Seek to Combat Discrimination, but Proof of Liability under Title VII is Less Burdensome to Plaintiff.**

Yes, as the defendants have pointed out repeatedly – including to the en banc and the Supreme Court – defendants won the state law jury verdict. The verdict form means now, not legally or factually. Nor does anything held by the Per Curiam panel, which was reversed by the en banc, which was affirmed by the Supreme Court. Selling the corporation does not protect the defense from Title VII – a different cause of action with a different standard of proof than the NYSHRL. Defendants do not apprise the court (or refuse to recognize) that the verdict was based on a different legal standard. It is *more burdensome* for a plaintiff to win a liability verdict

under the NYSHRL than under Title VII. The NYSHRL requires a plaintiff to prove that discrimination was the "but for" reason for the adverse action, but as explained below, Title VII is more generous

Judge Bianco instructed the jury with the "but for" standard. Plaintiff objected to the instruction, which preserved the appeal. The jury found that Plaintiff had not proved "but for" causation; but to prove a "motivating factor" is much simpler. The Circuit implicitly – and the U.S. Supreme Court explicitly – so found. Justice Gorsuch's decision analyzed a plaintiff's burden under the "but for" test for the most part but delved into "motivating factor" too. The passage below, a holding of the U.S. Supreme Court in this very case, states that plaintiffs may obtain relief under the less-burdensome "motivating factor" analysis. Justice Gorsuch compares the two, noting that but-for causation can be sweeping:

> Often, events have multiple but-for causes. So, for example, if a car accident occurred *both* because the defendant ran a red light and because the Plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision. When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor contributing to its challenged employment decision. So long as the Plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law.
>
> No doubt, Congress could have taken a more parsimonious approach. As it has in other statutes, it could have added "solely" to indicate that actions taken "because of" the confluence of multiple factors do not violate the law. Or it could have written "primarily because of" to indicate that the prohibited factor had to be the main cause of the defendant's challenged employment decision. But none of this is the law we have. If anything, Congress has moved in the opposite direction, supplementing Title VII in 1991 to allow a plaintiff to prevail merely by showing that a protected trait like sex was a "motivating factor" in a defendant's challenged employment practice. 42 U.S.C. §2000e-2(m). Under this more forgiving standard, liability can sometimes follow even if sex *wasn't* a but-for cause of the employer's challenged decision.

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739-40 (2020) (other citations omitted; italics in original).

If a plaintiff proves a "motivating factor," then she wins, at least in part. Here, a jury may find – and there is ample basis alleged in the pleadings and on this record – that Don Zarda's being gay was *a* reason for his termination. Maynard stated as much on tape. *Bostock*

4

holds that consideration of sexual orientation dovetails with consideration of sex as defined under Title VII. 150 S. Ct at 1739-40. If this or a similar Plaintiff can prove that Plaintiff's sex was a *single* motivating factor in his termination, she is entitled to nominal damages and attorneys' fees. 42 U.S.C. §2000e-2(m). The attorneys' fees here are significant as this litigation is now in its eleventh year. Corporate sleight of hand and comparison to the burdens of proof under state law are inapposite now. If Maynard had believed there was no chance he would liable as an accessory to his erstwhile corporation, he should not have told the U.S. Supreme Court otherwise. Plaintiffs want to win damages for the Estate, but we are a stone's throw from a finding of motivating factor. Such a finding would allow plaintiffs to obtain well into six figures of attorneys' fees. The Supreme Court's would not have granted certiorari if there were no live claim. It did and made clear that this Plaintiff was entitled to a motivating factor instruction. *Bostock*, 140 S. Ct. at 1739-40.

**II:     A Lack of Successor Liability Does Not Extinguish Predecessor Liability.**

What is a "successor?" Broadly speaking, a successor could be a predecessor if there is no pure successor to assume liability. This might be the situation we have here. Plaintiffs have not seen the sale contract; it would be helpful but underscores the lack of information we have at this stage. Even the allegations in the complaint stated "upon information and belief" will suffice. We can agree with the defense proposition that tacking magic words on the magic words "information and belief" will not, in ordinary circumstances, support proper pleading. But *the very case* the defense cites for this proposition also supports the exception: "Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018). That is precisely the case here: All allegations in the complaint about the corporate dissolution come from (1) public records,

5

which are scant; (2) statements by Maynard made to various courts – including this one, where the defendants forget their position before the Supreme Court; and (3) various search tools that have allowed me to glean *something* about what happened behind closed doors. These suppositions, many made on information and belief, are in keeping with *Citizens United v. Schneiderman*, 882 F.3d at 384-85 that makes the inference of culpability plausible." *Id.*

> A. Defendants' Inconsistent Positions on this Issue and its Failure to Provide Plaintiff Information Are Clear Bases to Deny the Motion.

Plaintiffs did not learn of the corporate sale or dissolution until after the en banc decision. Then, the issue became clear and was put on the record just before the defendants petitioned for certiorari. As the date to petition for certiorari approached, Judge Bianco denied plaintiffs further discovery – or any inquiry – to determine the actual defendant in interest. See transcript, attached as Exhibit B. Judge Bianco's ruling was within his discretion. Had plaintiffs lost at the Supreme Court, the issue would be moot. But we won and the Title VII issue is live. Maynard even preserved it for us. Defendants got access to the Supreme Court and hoped the whole thing would go away. It did not. Now, the defense wants to hide behind a corporate sale into which Plaintiff has even not been allowed to examine.

Moreover, a jury verdict under a state statute with an additional layer of proof has no vitality anymore. Without mentioning the dissolution of the corporation to the Circuit, defendants argued mootness on this ground unsuccessfully. They also noted the jury verdict many times and occasionally to the Supreme Court.[2] Most significantly, in the offing, the defense pled that Maynard could and should be a party to the Supreme Court proceedings because – as Mr. Zabell stated in the petition for certiorari:

---

[2] Please listen to the argument on the en banc appeal at minute 1:00-1:02. There Mr. Zabell does as here: He insists the jury verdict is the end of the inquiry. Judges Katzmann, Dorsey and Hall take issue with his position and Judge Jacobs notes that the two laws have different burdens of proof. Available at https://www.c-span.org/video/?433984-1/zarda-v-altitude-express-oral-argument.

6

> [T]here are multiple theories by which Maynard could be held responsible if Altitude Express is ultimately found liable for violating Title VII. [The Zarda Estate] could argue that the corporate veil be pierced, that Maynard is a mere "alter ego" of Altitude Express, or that Maynard is otherwise vicariously liable for his company's wrongful acts. . . . **"[E]xempting owner liability from Title VII does not permit owners who discriminate to escape unscathed. Owners will necessarily feel the pinch of the employing entity's liability if plaintiffs successfully 'pierce the corporate veil' and demonstrate that the owner is actually the 'alter ego' of the employer."** [The Zarda Estate] could also pursue a theory of respondeat superior. It is true that Maynard told the district court that "there is no active matter currently pending" against him. But that does not change the fact that Respondents could turn on Maynard if they prevail on their Title VII claim against Altitude Express. Indeed, given [the Estate's] reliance on the fact that Altitude Express is a dissolved corporation, such a pivot would appear inevitable.
>
> \*\*\*
>
> Altitude Express was a New York corporation. Thus, New York law continues to apply to all claims available to or against it as an entity, regardless of its current status. The New York law that governs this proceeding is Section 1006 of the New York Business Corporation Law[.]

Reply Brief Supporting Petitioner for Writ at 5-6. (Attached as Exhibit A.) (Emphasis added.)

Mr. Zabell then quoted all of New York Bus. Corp. Law § 1006. *Id.* He recited all the remedies plaintiffs would have upon remand. He did that as a strategic matter *to show the Court that there was still a live controversy to get the grant of certiorari*. Zabell wrote:

> Thus, under New York law – which [the Estate] concede[s] applies – a corporation no longer in existence remains responsible for its liabilities "until its affairs are fully adjusted." So not only does Altitude Express have proper standing . . . it also has standing as a matter of New York law. Moreover, the legal theory that [the Estate] advance[s] – successor liability – does not compromise Altitude Express' position concerning its entitlement to petition this Court or any potential proceedings that may follow if certiorari is denied. . . . Altitude Express has, is, and will continue to defend its interests with regard to Respondents' surviving claims and allegations because, as a matter of New York law, **Altitude Express can be held liable as though it were never dissolved.**

*Id.* at 6 (emphasis added). Mr. Zabell cannot take back his words now. His strategy in convincing the Supreme Court that *Zarda* was a good vehicle for review cannot be supplanted by his recent change in position.

- B. Defendants Are Judicially Estopped from Maintaining a Differing Legal Position. They Argued to the Justices that there Remained a Live Controversy to Win Grant of the Writ. They Cannot Now Take a Different Position.

7

Defendant's argument that Altitude Express is not liable now must be judicially estopped. Estoppel is applied when a party takes inconsistent positions in not only the same litigation but as the Circuit found, the notion of estoppel is flexible:

> [The Supreme] Court has made clear that judicial estoppel is a flexible doctrine, without fixed requirements. Second, the Court has stated that judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase," and prevents a party from asserting a factual position inconsistent with a position previously advanced by that party and adopted by the court in some manner, and a prior inconsistent representation made in a previous phase of the same case *can* trigger judicial estoppel.

*Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 620-21 2012 U.S. App. LEXIS 11731 **8-10 (2d Cir. 2012) (quoting from, inter alia, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir. 2011); and *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005) (quotation marks and other citations omitted).

The defense cannot take the position that Maynard has no liability – at least insofar as he was the sole shareholder. We might not even need to pierce the corporate veil: Maynard agrees that SDLI, Inc. cannot liable, then who is? The law does not allow the court to extinguish a live controversy simply because a corporation was dissolved. NY BCL § 1006. In its attempt to defeat this case at the Supreme Court, the defense placed all its eggs into the basket of obtaining a grant of certiorari and *winning*. It used a strategy that convinced the justices that Maynard had liability and that there was not just a defunct corporation on the caption. Were just a defunct corporation in the caption, it would have been a nearly impossible case to get a grant. Maynard was the ticket – he had lingering liability and Mr. Zabell explained it in detail. The only thing is that Zabell then had to win on the merits. Nevertheless, it won the grant of certiorari because it convinced the justices that there was a live controversy. The high court does not take cases otherwise and Maynard cannot take a contrary position now.

8

C. If Not Successor Liability, then Predecessor Liability.

The purchaser of Skydive Long Island – I believe it is called SDLI, Inc. – clearly bargained to avoid successor liability. But that does not preclude *predecessor* liability. SDLI, Inc. certainly knew of this lawsuit, but to negotiate its way out of buying a lawsuit does not mean that liability vanishes altogether. Instead, it returns from where it originated: The Corporation, of which Maynard was the sole shareholder, and its alter ego. *See* N.Y. Business Corporation Law § 1006(b) ("The dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution"). Defendants cannot deny Maynard's ownership status – at the time of sale or now. They place the phrase alter ego in scare quotes as if it were an unusual notion. It is not.

> As the New York Court of Appeals has held, courts
>
> will disregard the corporate form, or, to use accepted terminology, pierce the corporate veil,' whenever necessary 'to prevent fraud or to achieve equity. The party asserting this equitable doctrine seeks to go behind the corporate existence to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation. Properly understood, an attempt to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners.

*Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47, 73 N.Y.S.3d 95, 107 (2018) (upholding First Department in reversing dismissal of an alter-ego lawsuit) (punctuation touch up). *See also Worth v. Tyer*, 276 F.3d 249, 259-60 (7th Cir. 2001) ("An affiliated corporation also forfeits its limited liability when it takes actions for the express purpose of avoiding liability under the discrimination laws or where the affiliate corporation might have directed the discriminatory act, practice, or policy of which the employee is complaining.")

This court read the SDLI Inc. sales contract in camera. It reported that the entity purchasing the name and goodwill of "Altitude Express" contracted to avoid successor liability

9

on any pending "civil or criminal" matter. SDLI. Inc. surely knew this lawsuit was pending and wise to use the case as a bargaining chip in (perhaps) negotiating a better price. But that a third-party – a potential successor corporation – bargains to avoid liability does not mean that the predecessor is off scot-free. Usually, courts impose "successor liability," which the Seventh Circuit held "is meant for this very scenario; it helps make victims of discrimination whole under Title VII by combatting similar changes in business." EEOC v. N. Star Hosp., Inc., 777 F.3d 898, 903 (7th Cir. 2015) (citing *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 766 (7th Cir. 2013)) ("The predecessor's inability to provide relief favors successor liability, as without it the plaintiffs' claim is worthless."). Dissolving a corporation has never – at least as I have seen – wiped out a Title VII claim, and this should not be the first case.

Most often, courts look to the successor, the purchaser, to allow the plaintiff to find liability; perhaps the successor has deep pockets or assumes liability to close the deal. Here, SDLI, Inc. is not a deep pocket – as it appears to me. Instead – and the defense will not deny this –there was an arms-length negotiation involving parties of relatively equal bargaining power. Additionally, there is no showing that the predecessor corporation cannot defend the lawsuit. It would be to throw cold water in the face of civil-rights litigants to turn them out of court because of a third-party sale. No legal regime is so wooden that it must rub against the grain of public policy to allow anyone to extinguish a civil rights claim.

There is no single test to determine which corporation on a sale is a proper defendant after the sale. A person cannot own a corporation then sell it – presumably at a profit – to defeat a plaintiff's civil rights. Decisions on successorship must therefore balance national policies and the interests of the affected parties. *See Howard Johnson Co. v. Detroit Local Joint Executive Bd.*, 417 US 249, 262-63 n.9 (1974). *See also Steinbach v. Hubbard*, 51 F.3d 843, 846 (9th Cir. 1995) ("in light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional

10

guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." (Quoting *Howard Johnson* at 256). *Howard Johnson's* footnote 9 is particularly instructive, reasoning that the "real question in each of these 'successorship' cases is, on the particular facts, what are the legal obligations of the new employer to the employees of the former owner or their representative? The answer to this inquiry requires analysis of the interests of the new employer and the employees and of the policies of the labor laws in light of the facts of each case. . . . "There is, and can be, no single definition of "successor" which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others." *Local 32B-32J Serv. Emps. Int'l Union v. NLRB*, 982 F.2d 845, 849 (2d Cir. 1993).

      A "successor" need not be a new employer buying a former employer then being saddled with its debts. If a successor is not the most appropriate entity to answer the claim, the predecessor must defend. The fundamental issue in every transfer-of-ownership case is how to strike a proper balance between on the one hand preventing wrongdoers from escaping liability and on the other hand, facilitating the transfer of corporate assets to their most valuable uses. . . . To hold a purchaser of assets liable as a successor without notice of the potential liability or where the predecessor is capable of providing relief to the wronged party simply because the purchaser used the purchased assets and retained substantially the same workforce to conduct a substantially similar business would directly hamper, rather than facilitate, the transfer of corporate assets to their most valuable uses. Perhaps even more troubling, however, is that such a test would incentivize purchasers to fire all of the seller's employees to lessen the degree of continuity between the pre-sale and post-sale businesses." *Xue Ming Wang v. Abumi Sushi, Inc.*, 262 F. Supp. 3d 81 (S.D.N.Y. 2017) (citing, *Nutt v. Kees*, 796 F.3d 988, 991 (8th Cir. 2015) (other citations omitted.)

11

In *Xue Ming Wang*, the Court noted that the "substantial similarity" test had multiple prongs and that a court should focus primarily on two: First, whether the successor had notice of the lawsuit. Here, we presume that the successor did know of the lawsuit, as it expressly disclaimed residual liability in the contract. (Also, it celebrated the outcome of the en banc proceeding on its website.) The other important factor, at least according *Xue Ming Wang*, is if the predecessor is capable of providing adequate relief to the Plaintiff." *Id*. at 90. In *Xue Ming Wang*, the court dismissed the lawsuit's successors because there was no evidence that the predecessors couldn't pay. *Id*. at 95-96. Neither is there here. New York law provides that "the dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution." Id. (emphasis added, citing N.Y. Bus. Corp. Law § 1006(b)). "Therefore, the mere fact of dissolution is not dispositive here." *Xue Ming Wang*.

## CONCLUSION

For these reasons, the Court should estop the defendants from taking an inconsistent position than at the Supreme and otherwise deny the motion made to Title VII – a different cause of action with a different standard of proof than the jury decided in 2015.

Yours, Etc.,

/s/

GREGORY ANTOLLINO
Attorney for Plaintiffs
Antollino, PLLC
275 Seventh Avenue
New York, NY 10001