No. 17-1623

# In the Supreme Court of the United States

---

ALTITUDE EXPRESS, INC., *et al.*,

*Petitioners,*

v.

MELISSA ZARDA,

AS EXECUTOR OF THE ESTATE OF DONALD ZARDA, *et al.*,

*Respondents.*

---

*On Petition for Writ of Certiorari to the*
*United States Court of Appeals for the Second Circuit*

---

## REPLY BRIEF FOR PETITIONERS

---

SAUL D. ZABELL
  *Counsel of Record*
RYAN T. BIESENBACH
**ZABELL & ASSOCIATES, P.C.**
1 Corporate Drive, Suite 103
Bohemia, New York 11716
T: (631) 589-7242
F: (631) 563-7475
SZabell@laborlawsny.com

*Counsel for Petitioners*

---

Becker Gallagher · Cincinnati, OH · Washington, D.C. · 800.890.5001

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   Respondents wrongly criticize this case as a vehicle to decide the question presented. . . . 1

II.  The chaos among the circuits over Title VII's meaning warrants a grant, not a denial. . . . . 7

III. The Second Circuit's decision is wrong. . . . . . 8

IV.  At a minimum, the Court should hold the petition pending decisions in other, similar cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ii

# TABLE OF AUTHORITIES

## CASES

*Bostock v. Clayton County, Georgia*,
 No. 17-1618 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Flute v. Rubel*,
 682 F. Supp. 184 (S.D.N.Y. 1988) . . . . . . . . . . . 5

*Hively v. Ivy Tech Cmty. Coll. of Ind.*,
 853 F.3d 339 (7th Cir. 2017) . . . . . . . . . . . . . . . 8

*Lozman v. City of Riviera Beach*,
 138 S. Ct. 1945 (2018) . . . . . . . . . . . . . . . . . . 6, 7

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights
 Comm'n*,
 138 S. Ct. 1719 (2018) . . . . . . . . . . . . . . . . . . 6, 7

*Milliner v. Enck*,
 1998 WL 303725 (E.D. Pa. 1998) . . . . . . . . . . . 3

*R.G. & G.R. Harris Funeral Homes, Inc. v. E.E.O.C.*,
 No. 18-107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sandifer v. U.S. Steel Corp.*,
 134 S. Ct. 870 (2014) . . . . . . . . . . . . . . . . . . . . . 8

## STATUTES

42 U.S.C. §§ 2000e, *et seq.* . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 2000e-2(a)(1) . . . . . . . . . . . . . . . . . . . . 1

N.Y. Bus. Corp. Law § 1006 . . . . . . . . . . . . . . . . . . 4

## RULES

Sup. Ct. R. 12(6) . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

1

## INTRODUCTION

As explained in the petition and reiterated in Respondents' brief in opposition, there is a deep and mature circuit split over whether the word "sex" in Title VII's prohibition on discrimination "because of . . . sex," 42 U.S.C. § 2000e-2(a)(1), included "sexual orientation" when Congress enacted Title VII in 1964. The natural result of this deep division is that plaintiffs and defendants in employment-discrimination actions are receiving divergent results based solely on the circuit where they happen to be litigating. In such circumstances, there is no good reason to allow this important issue to "percolate" any further. Contra Br. in Opp. 18.

Implicitly acknowledging the need for review on the merits, Respondents try to demean the petition as a bad vehicle and spend substantial pages arguing why the Second Circuit decision below was correctly decided. But Petitioners are wrong about their vehicle objections, and their merits discussion only highlights the need for this Court's immediate review. The petition should be granted.

## ARGUMENT

### I.   Respondents wrongly criticize this case as a vehicle to decide the question presented.

Respondents' primary argument for denying the petition is that this case is purportedly the "wrong vehicle" for resolving the jurisprudentially significant and time-sensitive question presented. Br. in Opp. 12-16. This argument is without merit and fails as a matter of law and procedure.

1. Respondents first contend that the Court has no jurisdiction to hear a petition on behalf of Petitioner Ray Maynard, the owner of Petitioner Altitude Express. Br. in Opp. 12-13. Not so. Maynard's inclusion as a Petitioner comes directly from Supreme Court Rule 12(6), "Review on Certiorari: How Sought; Parties," which provides in relevant part:

> All parties to the proceeding in the court whose judgment is sought to be reviewed are deemed parties entitled to file documents in this Court, unless the petitioner notifies the Clerk of this Court in writing of the petitioner's belief that one or more of the parties below have no interest in the outcome of the petition.

There is no riddle nor ruse in Maynard seeking review of the decision below; he was a Defendant-Appellee. *See generally* Pet. App. 1. Pursuant to the Rules of the Court, Maynard is entitled to seek review of the Second Circuit decision. Whether he may ultimately face personal liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), has no relevance to the question presented by Petitioners or the Court's review of the same.

Notably, it has not yet been decided whether Maynard may face Title VII liability for the acts of his company. Respondents assert that the Second Circuit's decision "permit[ed] respondents to sue the corporation." Br. in Opp. 13. But the Second Circuit actually held that "Zarda is entitled to bring a Title VII claim for discrimination based on sexual orientation" without specifying which defendant or defendants could be held liable. Pet. App. 61a. Nowhere in the

3

decision does the Second Circuit categorically decide that question of who might be liable.

In addition, and consistent with Rule 12(6), there are multiple theories by which Maynard could be held responsible if Altitude Express is ultimately found liable for violating Title VII. Respondents could argue that the corporate veil be pierced, that Maynard is a mere "alter ego" of Altitude Express, or that Maynard is otherwise vicariously liable for his company's wrongful acts. *E.g.*, *Milliner v. Enck*, 1998 WL 303725, *2 (E.D. Pa. 1998) ("[E]xempting owner liability from Title VII does not permit owners who discriminate to escape unscathed. Owners will necessarily feel the pinch of the employing entity's liability if plaintiffs successfully 'pierce the corporate veil' and demonstrate that the owner is actually the 'alter ego' of the employer."). Respondents could also pursue a theory of *respondeat superior*.

It is true that Maynard told the district court that "there is no active matter currently pending" against him. Br. in Opp. 13. But that does not change the fact that Respondents could turn on Maynard if they prevail on their Title VII claim against Altitude Express. Indeed, given Respondents' reliance on the fact that Altitude Express is a dissolved corporation, such a pivot would appear inevitable.

In sum, Respondents' arguments regarding Maynard are wrong as a matter of law and under this Court's procedure. They do not present a barrier to granting the petition.

4

2. Respondents next say that the standing of Petitioner Altitude Express "is questionable at best." Br. in Opp. 13. It is not. Altitude Express was a New York corporation. Thus, New York law continues to apply to all claims available to or against it as an entity, regardless of its current status.

The New York law that governs this proceeding is Section 1006 of the New York Business Corporation Law, which provides, in pertinent part:

(a)   A dissolved corporation, its directors, officers and shareholders *may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place*, except as otherwise provided in this chapter or by court order. In particular, and without limiting the generality of the foregoing:

…

(4)   *The corporation may* sue or *be sued* in all courts and participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise, in its corporate name, and process may be served upon it.

(b)   The dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution…. [N.Y. Bus. Corp. Law § 1006 (emphasis added).]

5

Thus, under New York law – which Respondents
concede applies – a corporation no longer in existence
remains responsible for its liabilities "until its affairs
are fully adjusted." *Flute v. Rubel*, 682 F. Supp. 184,
187 (S.D.N.Y. 1988). So not only does Altitude Express
have proper standing pursuant to Supreme Court Rule
12(6), it also has standing as a matter of New York law.

Moreover, the legal theory that Respondents
advance – successor liability – does not compromise
Altitude Express' position concerning its entitlement to
petition this Court or any potential proceedings that
may follow if certiorari is denied. Altitude Express,
along with Maynard, have defended against
Respondents' claims since the charges of discrimination
were initially filed with the Equal Employment
Opportunity Commission in July 2010. Pet. App. 178f-
81f. As an entity, Altitude Express was dissolved in
March 2017. Altitude Express argued at trial in
October 2015; it argued before the Second Circuit in
January 2017, and again before an *en banc* panel after
dissolution in September 2017. Both Maynard and
Altitude Express were active parties in all proceedings
before the District and Appellate Courts. Altitude
Express has, is, and will continue to defend its
interests with regard to Respondents' surviving claims
and allegations because, as a matter of New York law,
Altitude Express can be held liable as though it were
never dissolved.

As Respondents point out, the first instance in
which any potential for successor liability was brought
up in this litigation was after the underlying decision
by the Second Circuit was issued and only eight days
before the petition was filed. Opp. App. 10a-15a. Said

6

another way, no lower court has determined the issue of successor liability. Respondents never pled or otherwise moved to include the putative successor to Altitude Express, despite the alleged succession having occurred approximately a year before the *per curiam* panel of the Second Circuit affirmed the District Court's dismissal of the Title VII claim and approximately two years before the filing of the petition. Pet. App. 4a-6a; Opp. App. 14a.

That Respondents have chosen to address successor liability for the very first time in opposition to the petition is highly improper. Essentially, what Respondents ask of the Court is to deny certiorari based on a hypothetical. This argument is based not on facts or a record, but on assumptions and possibilities. This Court should not deny the petition based on such speculation and disregard of New York law. Altitude Express remains, as it always has been, the "employer" defending this action. Respondents' argument is without merit and must be rejected.

3. Alternatively, say Respondents, the petition is a bad vehicle for resolving the question presented because of the case's "factual atypicality." Br. in Opp. 16. But it makes no difference to resolving the question whether Zarda was fired "because he was gay" or "because he revealed his sexual orientation to a customer of the firm." Contra *id.* Nor does it matter that Zarda was strapped to a woman when he revealed this information. Contra *id.*

The circumstances in *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719 (2018), and *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018), are quite different. Br. in Opp. 17. The Court

7

did not reach the questions presented in *Masterpiece* because it found an alternative ground (pervasive religious hostility) that superseded the Free Speech and Free Exercise claims that the petitioner had advanced. And *Lozman* in fact addressed the question presented in part: the Court made clear that probable cause does not *invariably* defeat a First Amendment retaliatory arrest claim, though it chose not to decide the circumstances when such a defeat will occur. In contrast here, the "distinguishing" facts to which Respondents point will not prevent this Court from deciding whether "sex" discrimination included "sexual-orientation" discrimination when Congress enacted Title VII.

## II.    The chaos among the circuits over Title VII's meaning warrants a grant, not a denial.

According to Respondents, the fact that the circuits are "grappling" with the question presented means this Court should not step in but wait for further percolation. Br. in Opp. 17-19. That argument is baseless. The lower courts have spilled more than enough ink on the issue. As the petition explains, the Second and Seventh Circuits are now in conflict with every other Circuit that has addressed the important issue of whether Title VII covers sexual-orientation discrimination. Pet. 12-13.

There is no indication that the conflict will resolve itself given enough time. And there is nothing more the lower courts could possibly write that would further inform this Court before it considers and resolves the question presented. Granting Respondents' request for delay will only perpetuate the acknowledged conflict

8

and confusion, which is a reason to grant review, not to deny it.

### III. The Second Circuit's decision is wrong.

Lacking a persuasive procedural reason for denying a grant, Respondents spend several pages arguing that the Second Circuit's analysis is correct. That issue is largely irrelevant to the propriety of granting the petition, particularly where there is a mature circuit split on an issue of such great importance.

Respondents are wrong about the merits in any event. As the petition explains, federal statutes—particularly those imposing substantial financial liability—must be interpreted by reference to their original public meaning, not by contemporary standards or definitions, and certainly not with the aid of judicial updating. Pet. 14 (citing *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014)). As Judge Posner candidly conceded in his concurrence to the Seventh Circuit's rewriting of Title VII, a "broader understanding of the word 'sex' in Title VII than the original understanding is . . . required in order to be able to classify the discrimination of which *Hively* complains [i.e., sexual-orientation discrimination] as a form of sex discrimination." *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 355 (7th Cir. 2017) (Posner, J., concurring).

This Court may decide to judicially update Title VII, as did the Second and Seventh Circuits, but it may not. Either way, lower courts and litigants across the country are entitled to this Court's definitive ruling and a uniform rule. It is untenable that employers and employees alike cannot manage their employment

9

relationships without consulting conflicting and irreconcilable circuit-court decisions. This Court's review is warranted.

## IV. At a minimum, the Court should hold the petition pending decisions in other, similar cases.

Lastly, Petitioners note that there are two additional petitions for writ of certiorari pending before the Court that present a similar, if not the same, question raised here. Petition for Writ of Certiorari, *Bostock v. Clayton County, Georgia*, No. 17-1618 (presenting the same sexual-orientation question raised in this case), and Petition for Writ of Certiorari, *R.G. & G.R. Harris Funeral Homes, Inc. v. E.E.O.C.*, No. 18-107 (asking whether the word "sex" in Title VII's prohibition on discrimination "because of . . . sex" meant "gender identity" and included "transgender status" when Congress enacted Title VII in 1964). At a bare minimum, Respondents respectfully request that the Court hold this case in the event one of these analogous petitions is granted.

## CONCLUSION

For the foregoing reasons, and those stated in the petition for a writ of certiorari, the petition should be granted.

10

Respectfully submitted,

SAUL D. ZABELL
    *Counsel of Record*
RYAN T. BIESENBACH
**ZABELL & ASSOCIATES, P.C.**
1 Corporate Drive, Suite 103
Bohemia, New York 11716
T: (631) 589-7242
F: (631) 563-7475
SZabell@laborlawsny.com

*Counsel for Petitioners*
*Altitude Express, Inc.,*
*formerly doing business as*
*Skydive Long Island, and*
*Ray Maynard*